CHARLES WILKES and THE PRESIDENT, DIRECTORS, AND COMPANY OF THE BANK OF NEW YORK, plaintiffs in error.

*against*

EDWARD LION, *ex dem.* MEDCEF EDEN and JOHN WOOD, otherwise called JOHN WOOD, JUNIOR, assignee of MED-CEF EDEN, defendant in error.

E. died in September, 1798, having, by his last will, dated August 29, 1798, devised lands to his son Joseph, in fee; and other lands to his son Medcef, in fee; and added, " It is my will, and I do order and appoint, that if either of my said sons should *depart this life, without lawful issue,* his share or part shall go to the *survivor ;* and, in case of both their deaths, without lawful issue, then I give all the property, &c. to my brother John E. of, &c. and sister Hannah J. of, &c. and their heirs." Joseph, one of the sons, died in August, 1812, without lawful issue, leaving his brother M. surviving, who afterwards died on the 26th July, 1819, without lawful issue: *Held,* that on the death of the testator's son Joseph, the limitation over, which was good as an executory devise, vested in M. the surviving son:

And per Sanford, Chancellor, concurring with the Court below, the devise in his favor, having taken effect, ceased to be executory, and he became seised in fee tail, by necessary implication of law, with a remainder expectant in favor of John E. and Hannah J. the brother and sister of the testator; and by virtue of the statute of the 23d of February, 1786, abolishing estates tail, M. became seised, in fee simple absolute, of all the estate devised to his brother Joseph.

But per Cramer, Senator, the devise to John E. and Hannah J. was originally limited upon too remote a contingency, to wit, an indefinite failure of issue in the two previous devisees. This not being qualified, like the

devise over to Medcef, by the word *survivor*, the last devise was void for this reason.

No division of the Court was taken as to the ground upon which they denied operation to the last devise; but they voted *generally*, to affirm the judgment below.

A person holding land by *deforcement* merely, cannot levy a fine so as to affect or bar a stranger to it:

And, accordingly, B. having purchased Joseph's interest in his lifetime, and levied a fine thereof; *held*, that this would not bar the right of Medcef.

When the first of several executory devises vests in possession, those which follow, vest in interest at the same time, and ceasing to be executory, become vested remainders, subject to all the incidents of remainders. Per Sanford, Chancellor.

No remainder can exist without a preceding estate to support it. *Id.*

Whenever a devise of a future interest can take effect as a remainder, it shall be so considered, and not as an executory devise. *Id.*

Our laws allow the owner of lands to devise them according to his affections or his pleasure. *Id.*

*Rule* recognized, that an executory devise shall not prevail, when it extends beyond a life or lives in being, and 21 years and 9 months afterwards. *Id.*

All dispositions in the nature of entails are opposed to the policy of our institutions.

*It seems,* that estates tail are not simply abolished and thrown back to fees conditional at the common law, either by the statute of 1782, the statute of 1786, (vid. 1 Greenleaf, 205. 1 Kent & Radcliff, 44. 1 Woodworth & Van Ness, 52,) or by the statute of 1788, repealing all the English acts. (Vid. 2 Greenleaf, 116, s. 37. 1 Kent & Radcliff, 358, s. 28. 1 Woodworth & Van Ness, 526, s. 30.) But these statutes suffer the estate tail to arise, and then change it into a fee simple.

The maxim *stare decisis* considered, *arguendo*, by counsel; by Root, President, Sanford, Chancellor, and Wheeler, Senator, in the course of discussion; and by Cramer, Senator, in delivering his final opinion in the cause.

*Construction of devise.* Authorities cited that a will must be construed throughout as it should have been at the instant of the testator's death, and cannot be varied by subsequent circumstances. Per Jones, counsel, immediately after the close of the attorney general's argument.

*Seisin of the devisor.* Authorities cited showing that he must be seised at the time of his death; otherwise devise cannot take effect. *Id.*

*Ejectment.* Authorities cited, that if the interest of the plaintiff's lessor expire after the commencement of the suit, and before judgment, he shall have judgment and execution for his damages, but not for the land. *Id.*

*Ejectment.* Authorities cited and considered, which show the exceptions to the rule that the defendant may protect himself by showing an outstanding title. Burr, counsel, *arguendo*. Answer by Jones, counsel, at the close of his reply.

*Evidence.* Authorities cited, showing that after a man's absence for seven years without being heard of, he shall be presumed dead. Burr, counsel, *arguendo.*

ERROR from the Supreme Court. This was one among several causes, the fate of which was supposed to have been fixed by the decision in *Anderson* v. *Jackson,* (16 John. Rep. 382.) The present cause related to the same subject matter, and involved a construction of the same will, which called forth such elaborate discussion in that cause, not only from the counsel but the Court of Errors. (Vid. the opinion of Yates, Senator, id. 435, and the dissenting opinions of the late Chancellor Kent, and Hammond, Senator, id. 397, 424.) Speaking of the prominent point in that case, Chancellor Kent remarked, " This may well be considered a grave and important question, demanding the utmost care and attention on the part of this Court ; for it was said, on the argument, that property, to the value of *half a million of dollars,* depended upon the decision to be made in this case."

The circumstances out of which this litigation arose, are briefly these : Medcef Eden, the elder, being seised in fee of the premises in question, and having two sons, Joseph and Medcef, made his will, dated August 29th, 1798, by which he devised certain real estate in the city of New York and its vicinity, including the premises in question, to Joseph and his heirs, &c., and assigns ; and certain other real estate to Medcef and his heirs, &c., and assigns ; and then added, " If either of my said sons should *depart this life without lawful issue,* his share or part *shall go to the survivor*—and in case of *both their deaths without lawful issue,* then I give all the property aforesaid to my brother, John Eden, of Loftus in Cleveland, in Yorkshire, and my sister, Hannah Johnson, of Whitby, in Yorkshire, and their heirs."

Medcef Eden, the elder and devisor, died seised, September 8, 1798, and his son Joseph took possession, as devisee. Between the 16th of May, 1801, and his death, all his interest under the devise passed into other hands by a sale upon several writs of *fi. fa.* against him, the Bank of New York, one of the plaintiffs in error, being the principal pur-

chaser. A part of this interest came to Anderson. Joseph died on the 20th August, 1813, without lawful issue.

On the 16th April, 1816, the Bank of New York conveyed the subject of their purchase by deed of bargain and sale in fee simple to one Goelet, to make him a tenant to the *præcipe*, in order to levy a fine which was completed January term, 1817. The writ of covenant was tested January 13th, 1816, the first proclamation was in May term, 1816, and the last in January term, 1817.

One question in this suit was, whether this fine was not void, because the parties thereto had no estate in the premises.

The claim of Anderson had been determined against him, independent of this last point, in *Anderson* v. *Jackson*, on error, January, 1819.

May 16th, 1819, Medcef, the younger, entered to avoid the fine, and demised to Lion, the defendant in error.

It was supposed that *Anderson* v. *Jackson* had settled the controversy in relation to the entire subject of the devise to Joseph ; but before the trial of this cause, (Dec. 2d, 1820,) Medcef, the younger, died without issue, having made a will, &c., which gave rise to the additional question, whether the premises had not passed, by the ulterior devise, to John Eden and Hannah Johnson.

This suit was on the demise of Medcef Eden, the younger, to Lion, in the lifetime of the former, for 15 years from the 6th May, 1819. The lease was actually executed as laid in the declaration. At the trial, a special verdict was found containing the material facts as above stated, on which the Supreme Court gave judgment for the plaintiff, January term, 1823.

The reasons for this judgment were assigned as in 20 John. Rep. 486 to 492.

For a more particular account of the facts, see 20 John. Rep. 483, (S. C.) and *Anderson* v. *Jackson* (16 John. Rep. 382.)

*Talcott,* (Attorney General,) for the plaintiffs in error stated the following points ;

1. That Joseph Eden was seised of an estate in fee sim-ple, absolute in the premises in question, at the time the judgments against him, under which the title of the plain-tiffs in error is derived, were docketed; and the plaintiffs in error, or those under whom they hold by the Sheriff's sale and conveyances by virtue of the executions on those judgments, acquired a valid and effectual title to the premi-ses in fee simple.

2. That the estate of Medcef Eden, the younger in the premises in question, if he had any estate or interest there-in, was (in the events that happened) an estate for life, which was terminated by his death. His interest, if he had any interest in the premises, being at most, that of a tenant under an executory devise, determinable by his death with-out issue; and he having died without issue, his title, and that of all persons claiming title from or under him, was determined.

3. That the fine barred all the right of Medcef Eden, the younger, to the premises in question, if he ever had any right thereto.

4. That the plaintiff in the suits in the Supreme Court was not entitled to any judgment on the special verdict in the cause; or if he was entitled to any judgment, he could only be entitled under the circumstances of the case, to judg-ment for the damages found by the jury, and not to judg-ment for the term, or any estate or interest in the premises in question.

5. That the judgment of the Supreme Court is erroneous and ought to be reversed.

1. For the situation of real titles in England, before the statute *de donis*, the Court are referred to 1 Reeve's History of the Common Law, 294. The case of a conditional fee is there stated much like the present. I refer to this author, because Blackstone(*a*) has limited his attention principally to that class of conditional fees at which the statute *de do-nis* was particularly aimed, and which were changed by it into estates tail.(*b*) These were estates to a man and the heirs of his body, or the heirs male of his body, &c., or to the heirs of his body and on failure of these then over; in

ALBANY,
Dec. 1823.

Wilkes
v
Lion.

(*a*) 2 Bl. Com
110.

(*b*) 1 Reeve's
Hist. C. L.
395. 3 id. 4, 5

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(c) 13 ed. 1.

(d) 2 Bl. Com. 112, Litt. s. 13.

(e) 2 Bl. Com. 112.

(f) 2 Reeve's Hist. C. L. 166. 3 id. 4, 5.

(g) 32 H. 8. c. 1. 34 & 35 H. 8, c. 5. 12 Car. 2, 24. 1 Greenleaf, 386, 7. 1 K. & R. 178. 1 Woodworth & Van Ness, 364.

(h) 1 Burr. 38.

(i) 2 Wils. 88.

(j) 7 T. R. 585.

(k) 1 East, 229.

which cases, on the donee having issue, the estate became absolute, and he might convey. Reeve(c) states a variety of other cases. The statute of Westminster, 2, recited the mischief which attended these fees conditional, and provided that the will of the donor should henceforth be observed, by the reverter of the estate on failure of issue.(d) Upon the construction of this act, says Blackstone,(e) the Judges "divided the estate into two parts, leaving in the donee a new kind of particular estate, which they denominated a *fee tail;* and vesting in the donor the ultimate fee simple of the land, expectant on the failure of issue;" and they admitted of no such thing as a fee conditional.(f)

After the statute of wills,(g) the doctrine of the statute *de donis* was transferred to these; that is to say, the intent was to be pursued; but on this head the Courts have found very great difficulty in construing the intention. One rule which they have adopted is, that where the testator appeared to have one great general intent, the particular intent shall yield to it. This rule as to the question whether the devisee shall take an estate tail, is exemplified in *Robinson* v. *Robinson,*(h) *Driver* v. *Standring & Hoole,*(i) *Roe* v. *Jeffrey,*(j) and *Doe* v. *Cooper.*(k) Now, there were two objects to be accomplished by this limitation: One was to provide for the issue of Joseph indefinitely, which could be accomplished only by the creation of an estate tail ; another was a limitation over to Medcef on the failure of Joseph's issue, with the same object of providing indefinitely for the issue of the latter. A devise in fee simple generally would have defeated the intent by placing the subject in the power of the first taker, or if in fee tail, the contingency was too remote to warrant a limitation over. If we are correct in saying that the testator intended to provide for the issue of the first taker indefinitely, then, whatever estate may have been created by these words under our law, it cannot go over ; and it must share the same fate, if it amounted to an estate tail.

The words *dying without issue,* import an indefinite failure of issue, not only in their legal and technical sense, but

such was probably the ancient popular meaning of the phrase. The writ of *formedon in the remainder* always alleged that the donee died without heir of his body issuing ;(*l*) and the allegation was satisfied by proof that issue failed either at his death, or at any time afterwards.

It is a general principle in the construction of wills, that when a testator uses words which have been defined by judicial decision, he must be considered as speaking conformably to legal definition, unless there are other circumstances clearly indicative of a different intent.(*m*) It is material, then, to see whether there is, by the English decisions, any settled construction of the words, *dying without issue* ; and of this there is no doubt. It is perfectly well established there, that these words, uncontrolled, give an estate tail to the first taker, and the limitation over is a remainder ;(*n*) and, though, in common conversation, they might mean a *failure of issue, living at the time of the donee's death*, yet unless this meaning is plain from other words of parts of the will, the ancient signification must prevail. We admit that these words are not absolute and uncontrollable ; but are there any circumstances here to take them out of the general rule ? The first devise is of one piece of property to Joseph, his *heirs and assigns* ; the second of another and separate piece to Medcef, his *heirs and assigns*. Though these words purport to give a fee simple ; yet if the limitation over is understood to be upon an indefinite failure of issue, they create but a fee tail. In *Doe* v. *Ellis*,(*o*) Lord Ellenborough, Ch. J. says of a will, containing a disposition similar to the one under consideration, that "the premises, however large, may be restrained by the context, as premises, however narrow, may be enlarged by it." That the word *assigns* is added, does not vary the case.(*p*) In *Doe* v. *Ellis*, the Ch. J. says, "as to the word *assigns*, which follows heirs, we cannot collect any different intention from the addition of it, than if the word *heirs* alone had been used. Whether an estate be given to a man and his *heirs*, or to him and his *heirs* and *assigns*, must be the same thing in legal construction." The words, *depart this life*, without, &c. are of precisely the same

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(*l*) Booth, 152.

(*m*) Counden v. Cleek, Hob. 33. Ide v. Ide, 5 Mass. Rep. 501, per Parsons, C. J.
(*n*) Doe v. Ellis, 9 East, 386. Tenny v. Agar, 12 id. 261. Most of the cases on this head, English and American, are cited and commented upon by Kent, chancellor, in Anderson v. Jackson, 16 John. Rep. 405 to 424.

(*o*) 9 East, 386.

(*p*) 2 Fearne, 4 ed. 203 to 209. Roe v. Scott, id. 203. Porter v. Bradley, 3 T R. 206, and vid. 3 Leon. 5.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(q) Roe v.
Scott, 2
Fearne, 4 ed.
203. Denn v.
Clark, 1
Coxe's N. J.
Rep. 340.
(r) 7 T. R.
5ac

(s) N. Y. F.
Ins. Co. v. De
Wolf, ante,
66, 70.

legal import as the more usual words *shall die*, without &c.(q) In *Roe* v. *Jeffrey*,(r) the words were precisely the same as used here, yet the words *depart this life* were not relied upon as varying the technical import.

Here, then, is nothing to take these words out of the general rule, except the single word *survivor* ; which is relied on to show that Joseph took a fee simple determinable by his death, without issue then living, and that the estate, therefore, passed over as a contingent remainder.

*A. Burr*, for the defendant in error, wished to be informed whether counsel proposed to question the case of *Anderson* v. *Jackson*? (16 John. 382.)

*Talcott.* This must depend upon the Court.

*Burr.* It was there solemnly settled, that the limitation over from Joseph to Medcef, was an executory devise. Perhaps hundreds of wills may have been drawn in reference to that very decision. Will not the barely allowing it to be questioned, impair that confidence in your stability which should be jealously maintained ? It was but the other day that you stopped counsel upon the same ground ;(s) telling them that a point once settled by this Court was not again to be questioned here. Permitting a contrary course would be alarming in the highest degree. What case can be relied on as fixing the law of the land ?

*M. Van Buren*, (same side.) The first point made by the plaintiffs in error is, that Joseph Eden had a fee simple absolute, and it is now proposed to infer this from the fact that the operative words would have created an estate tail under the statute *de donis.* Now, we say, that matter is not to be debated. It is not open. It was closed in *Jackson* v. *Anderson.* It was there decided, in so many words, that the phrase in question would not have created a fee tail, but that it did create a fee simple, determinable upon Joseph's death, without issue. This was the precise point determined, arising too upon this very will. To prove the importance of adhering to an uniform rule of decision, he read from

1 Bl. Com. 10. 11 ; and he remarked, that in *Foley* v. *Bur-*    ALBANY,
*nell,(t)* the House of Lords pursued the same course which   Dec. 1823.
this Court lately took in *The New York Insurance Com-*   Wilkes
*pany* v. *De Wolf.* He also referred to the concluding part   v.
of *Goodyer St. John* v. *Bishop of Winchester.*(1) Again,   Lion.
this was not made a point in the Court below.

*(t)* 1 Br. Ch
Rep. 286.
(1) 1 Bl
Rep. 930.

*Talcott.* Whatever may be the rule of the Lords, I hope
the time may not arrive, when this Court will refuse to cor-
rect an error, which it shall be satisfied is a gross one. The
common law of England, in 1775, was made the law of this
state, by the constitution,(u) and if this Court have erred in   *(u)* Con. Art
pronouncing that law, they owe it to their oaths and the con-   7, s. 13.
stitution to correct the decision. This Court have reviewed
their decisions. *Yates* v. *The People,*(v) was not only   *(v)* 6 John
questioned on the argument, but partially overruled in   Rep. 337.
*Yates* v. *Lansing.*(w) We are told *stare decisis.* Why   *(w)* 9 Id. 394
not apply this rule to the decisions in the English books,
which preceded the case of *Anderson* v. *Jackson,* and which
form the law of the land ?

But we propose, not merely, to question that case. We
also mean to show that the words of the will would, under
the statute, *de donis,* create an estate tail in Medcef Eden,
and that the decision in *Anderson* v. *Jackson,* if correct in
the result, will, when referred to its true reason, carry over
a conditional fee to Medcef Eden, which, for the same rea-
son, passed, on his death, without issue, to John Eden and
Hannah Johnson. What we say, then, will be equally
applicable to the question upon the ulterior limitation.

*S. Jones,* (same side.) The opening has led collaterally
to this discussion, and the Court cannot, of course, so fully
understand our views, as if we had pursued the argument
without interruption. My associate was proceeding to show,
that by the English law this would be an estate tail in
Joseph Eden, and if not so considered here it must be upon
principles peculiar to this state ; and that, taking this to be
the law, upon those new principles, it carries over the devise

ALBANY,
Dec. 1823.

Wilkes
v
Lion.

(x) 2 Caines'
Cas. Err. 217.
2 John. Cas.
451, S C.

as a fee determinable, from Medcef Eden to John Eden and Hannah Johnson.

But this Court have reviewed their own decision. In the late case of *New York Insurance Company* v. *De Wolf,* they merely said they would look to the question, and unless there were strong reasons for a review, they would not allow it to proceed.

*Talcott.* In both views, we propose to show that the word *survivor* does not take the phrase out of the general rule.

THE CHANCELLOR. It is true, that in *The New York Insurance Company* v. *De Wolf,* we did refuse to hear an argument as to one of the points, which had been passed upon by this Court in *Vandenheuvel* v. *The United Insurance Company,*(x) and I assent to all that has been said, in this case, as to the impropriety of opening decisions plainly and solemnly made. I do not, at present, understand how far the case of *Anderson* v. *Jackson* may be considered as settling any point in this cause, in the view which counsel propose to take. Occasions may arise when this Court ought to review their decisions. If, on examining *Anderson* v. *Jackson,* I find that it decides precisely the first point now taken, I shall yield it reluctantly.

ROOT, President. In *The New York Insurance Company* v. *De Wolf,* an order was made that I should stop counsel on a particular point ; but here I should be at a loss in directing the counsel how far he should go. I should suppose counsel would not question any point plainly decided in *Anderson* v. *Jackson,* both in its principle and object. But it is proposed to distinguish the principle upon which that case proceeded, and other and ulterior objects are avowed. In this view of the question, I cannot give directions even upon the maxim *stare decisis.* I have no doubt this Court will determine to abide by their former decision, provided they find they first point settled in *Anderson* v. *Jackson.*

*Talcott.* We propose, then, to show that the case of *Anderson* v. *Jackson* could not have been decided upon the

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

word *survivor*, and that being independent of that word, both limitations over must be governed by the same rule, that if the first is to take effect the second must go over upon the same principle.

The case which has been followed by the authorities relied upon against us is that of *Pells* v. *Brown*,(y) where the testator devised to " Thomas, his son and his heirs forever, paying to his brother Richard £20 at the age of 21 years; and if Thomas died without issue, *living* William his brother, that then William his brother should have those lands to him, his heirs and assigns forever, paying the said sum, as Thomas should have paid." Thomas died without issue, *living* William, and it was holden that this was a contingent fee to William by way of executory devise. Now it is important to inquire what reliance can be placed upon this case as depending on the word *survivor*. Three years before, in *King* v. *Rumball*,(z) a devise to three daughters, *and if they all died without issue*, then over, was holden to create an estate tail. In *Webb* v. *Hearing*,(a) a similar decision was made upon words to the same effect with the last. And it is remarkable, that only four years after *Pells* v. *Brown*, the same Court, composed of three of the same Judges (Doderidge, Houghton & Chamberlain) who decided that case, gave a construction to this word *survivor* with reference to the very effect claimed for it here. I allude to the case of *Chadock* v. *Cowley*.(b) The testator devised all his lands in Bradmere to Thomas his son and his heirs forever, and his lands in East Leak to Francis his son and his heirs forever, and then added, " Item. I will that the *survivor* of them shall be heir to the other, if either of them die without issue." And the sole question was whether this devise created an estate tail to Thomas, or only a contingent estate if he died without issue in the life of his brother. And it was holden by all the Court (in the absence of Lea, Ch. J.) that it was an estate tail in Thomas. The case proceeds in this manner : " Although it were objected that the words, *the survivor shall be heir to the other, if he die without issue*, are idle, for it doth not appear that he had any other children ; and then, when the one dies without issue, the other is his heir by the law, and so he wills no more than the law appoints ; *sed non alloca-*

(y) Cro. Jac 590.

(z) Id. 448.

(a) Id. 415.

(b) Id. 693.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

*tur;* for *non constat,* but that he might have other children, and that by several venters; and by the devise he intended to give it to the others by way of devise if he died without issue. *Secondly;* for the words, *that the survivor shall be heir if he dies without issue,* they seem to be an estate tail. But if the devise had been, *that if he died without issue in the life of the other, or before such an age,* that then it shall remain to the other; then peradventure it should be a contingent devise in tail, if it should happen and not otherwise: but being *that the survivor shall be heir to the other, if he die without issue,* that, in his intent, is an absolute estate tail immediately, and the remainder limited over. And that here, although the first part of the will gives a fee, the second part corrects it and makes it but an estate tail." The Court thus distinguish as to the word *survivor,* and rely upon this as creating, not preventing an estate tail. Again, in *Hope* v. *Taylor,*(c) there was a devise to W. T. and others; "and if either of the persons before named die without issue lawfully begotten the said legacy shall be equally divided between them that are left alive," (i. e. *survivors,*) and held that W. T. took an estate tail; and the word *survivors* was not even relied upon. In *Roe* v. *Jeffrey,*(d) the devise was in fee, and in case the first taker should *depart this life and leave no issue,* then over to three others or the *survivor or survivors* of them. The first taker did not have an estate tail it is true, but this was not on account of the word *survivor,* &c., but because the ulterior limitation was of a life estate merely. So in *Toovey et al.* v. *Bassett et al.*(e) the devise was to the grand-children in fee, with a limitation to the *survivors* on a dying without issue, &c., but there was no stress laid on the word *survivors.* The remarks of Mr. Justice Story in *Lillibridge* v. *Adie,*(f) have a direct application to this case; and what he says of *Porter* v. *Bradley,*(g) and *Roe* v. *Jeffrey,*(h) shows that the term *survivor* can have no influence in controlling the generality of the clause. His words are these: "In respect to terms of years and other personal estate, Courts have very much inclined to lay hold of any words to tie up the generality of the expression, *dying without issue,* and confine it to *dying without issue living at the time*

(c) 1 Burr. 268.

(d) 7 T. R. 585.

(e) 10 East, 460.

(f) 1 Mason's Rep. 236.
(g) 3 T. Rep. 143.
(h) 7 T. R. 585.

*of the person's decease.* But in respect to freeholds, the rule has been rigidly enforced, and rarely broken in upon, unless there were strong circumstances to repel it.(*i*) The cases of *Porter* v. *Bradley*(*j*) and *Roe* v. *Jeffrey*,(*k*) have gone a great way, but they turn on distinctions, which though nice, clearly recognize the general rule. In the first case, the devise was " to my son A. and his heirs and assigns, and in case he should happen to die, *leaving no issue behind him,* then to my wife B. during her widowhood, and after her decease or marriage, to my son C. his heirs and assigns forever." Great stress was laid upon the words *leaving no issue behind him,* and upon the circumstance of there being a life estate to B. as confining the contingency to the death of A., and the Court held that A. took a fee, and that the devise over was a good executory devise. In the last case, the devise was " to my grandson A. and his heirs forever, but in case A. should depart this life and leave no issue, then the premises shall return unto my grand-daughters, B., C., D., or the survivor or survivors of them, to be equally divided betwixt them, share and share alike." The Court held that A. took a fee, and that the executory devise over was good, the contingency being confined to a life then *in esse.* Great stress was laid upon the circumstance, that the grand-daughters were then living, and only took estates for life. If the estates over in this last case had been in fee, it seemed admitted that the other words would not have pointed to any other period than an indefinite failure of issue ; and consequently to support the limitation over, it must have been held that A. took an estate tail only. In *Wooley* v. *Norwood*,(*l*) the devise was to the testator's three nephews, and then to the *survivors,* on any one of them dying without issue ; and the words *survivors* is not made a ground for argument or decision as tending at all to give a character to their estate. And in *Barlow* v. *Salter,*(*m*) this word *survivors* was relied upon, but it was expressly determined by the master of the rolls, that it did not vary the case. He says " the word *survivors* as here used, has the same sense as the word *others,* as has been frequently decided."(*n*) *Roe* v. *Scott & Smart,*(*o*) presents precisely the case under consideration.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(*i*) Fearne
Ex. Dev. 357,
361. Butler's
ed. 471, 476.
*Croke* v. *De Vandes,* 9 Ves.
197. *Dansey*
v. *Griffiths,* 4
Maule & Selw.
61.
(*j*) 3 T. R.
143.
(*k*) 7 T R.
589.

(*l*) 2 Marsh.
Rep. 161.

(*m*) 17 Ves.
479.

(*n*) Id. 482.
(*o*) 2 Fearne,
4 ed. 2C3
MSS.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

The testator devised certain lands to his son James, to hold to him, his heirs and assigns forever; other lands to his son John, to hold to him and his heirs and assigns forever; and other lands to his son Thomas, and his heirs and assigns forever. He then added, that if either of his three sons should *depart this life without issue of his or their bodies,* then the estate or estates of such sons should go to the *survivors* or *survivor;* and if all his three sons should happen to die without such issue, then he devised all the said premises to his four daughters and their heirs and assigns forever. The three sons survived the testator and entered, and John died, unmarried, some time after the intestate. Thomas died, leaving a daughter who died without issue; and the question was whether Thomas took in fee or in tail. If in fee the estate would go to the heirs of the daughter; but if in tail to James the then survivor of the three brothers. The author considers the force of the several words *assigns, depart this life,* and the words *survivors* or *survivor,* as apparently carrying an estate to them or him for life only, which he says, furnishes a reasonable ground to confine the contingency, in construction, to a death without issue during the lives in being; which has been held in executory devises to be a reasonable construction, if it falls within the limits of ever so many lives in being at the same time. Yet the words were holden, to carry an estate tail to Thomas, which on the death of the daughter, went over to James.

(p) 1 Cox. N.
J. Rep. 386.

This very case also came under consideration in *Denn* v. *More.*(p) and it was decided that the first taker was entitled to an estate tail. This last case was first decided by the Supreme Court; and afterwards on Error to the Governor and Council, the judgment was affirmed.

(q)      Vid.
Hughes   v.
Sayer, 1 P.
Wms. 534.

(r) Id.
(s) Barlow
v. Salter, 17
Ves. 479.

It is true, there has been an English case,(q) in which a bequest of *personal property* to the *survivor* upon a dying without issue, has been holden limited, by this word *survivor,* to a dying without issue living at the death of the first taker. But there is a distinction between *real* and *personal* property. One Judge has given a restrictive operation to this word, in cases of personal estate ;(r) but there is a difference, even in this case.(s) In relation to real property, how-

ever, there never was any difference in the English cases. Real estate would descend to the heir, and the intent of the testator to control the descent, so as to bestow a personal favor by the limitation over, should be plain beyond a doubt. It is different in regard to goods and chattels. But even in the latter case where there is an intent to provide for the issue indefinitely, the general rule prevails and declares a limitation over void, as dependant upon too remote a contingency. In *Massey* v. *Hudson*,(t) the Master of the Rolls says, "If a bequest to A. in case B. shall die without issue be allowed, A.'s representative would be entitled to take at whatever time the issue might fail. It is for that reason that it is held too remote. But if A. is personally to take the legacy, then the presumption is strong that an indefinite failure of issue could not be in the testator's contemplation. *Prima facie*, a bequest over to the *survivor* of two persons, after the death of one without issue, furnishes this presumption; for it will be intended that the *survivor* was meant individually and personally to enjoy the legacy, and not merely to take a vested interest which might or might not be accompanied with actual possession. For if the *survivorship* be necessary only to vest the interest and to render it transmissible, the objection of remoteness is not at all obviated, and the restrictive presumption does not arise. Now the addition of the words, *executors, administrators or assigns*, excludes the presumption that it was a mere personal benefit that was intended for the *survivor*. For though there should be no such failure of issue as could enable him *personally* to take, yet his *representatives* would be entitled to claim in his right whensoever the failure of issue should happen." He proceeds to question the case of *Nicholls* v. *Skinner*,(u) as repugnant to every principle upon which it professes to proceed ; and that the limitation over after a dying without issue could not have been taken out of the general rule by the words *survivor and his heirs*. And it appears at the close of the opinion, in *Massey* v. *Hudson*,(v) that the master of the rolls had compared the report of *Nicholls* v. *Skinner*, with the registry book and found, contrary to the report, that the bequest over was holden void.

(t) 2 Merrivale, 133.

(u) Prec. Ch. 528

(v) 2 Merrivale, 135, 6.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(w) 5 East, 501.

(x) 10 id. 460.

(y) 6 John. Rep. 185.

(z) 11 John. 337.

(a) Id. 348.

In the case under consideration, it is agreed on all hands that the devise to Medcef Eden was transmissible to his issue; not restrained with a view to his personal benefit. The devise extends to *all the estate* in the lands The words of devise to Medcef are as broad as those used, either in *Doe* v. *Stopford,*(w) *Toovey et al.* v. *Basset et al.*(x) *Jackson* v. *Merril,*(y) or in *Jackson* v. *Staats.*(z) In the last case, Spencer, J. says,(a) that in *Jackson* v. *Merril,* it was decided that " the deviseover of *their parts,* which in the hands of the first devisees was considered in fee, necessarily referred to the estate or interest before devised; and that the ulterior devise was clearly intended to be as extensive as the antecedent one." In this case, there was a fee, a transmissible estate, devised to Joseph; this, in the language of Spencer, J. went over to Medcef; and if so, even if we apply the doctrine relative to the limitation of personal estates, it is not taken out of the general rule.

(b) 3 Dy. 330, b. 1 Rol. Abr. 839, pl. 3.

(c) 2 B. & P 324.

*Cluche's case,*(b) when taken in connection with what Ld. Elden says, in *Doe* v. *Wetton,*(c) explanatory of the first case, would establish, that the devise to Joseph was a fee tail, and that to Medcef, a fee simple determinable on a definite failure of issue.

Thus the case of *Anderson* v. *Jackson,* overrules the English common law; but I trust we have shown that this could not have been upon the ground of *survivor.* It was on the ground, that, under our local policy and the statute turning estates tail into fee simple, no man should be construed to mean an estate tail unless he says so in terms; or in other words, that these estates are no longer to be implied.

Then if the devise to Joseph, and the one to Medcef which followed, are to be construed according to *Anderson* v. *Jackson,* on the death of Medcef without issue, the whole estate went over to the English devisees, John Eden and Hannah Johnson. In determining the case of *Anderson* v. *Jackson,* the Court cite *Fosdick* v. *Cornell,*(d) *Jackson* v.

(d) 1 John. Rep. 440

*Blanshan,* (e) *Moffatt* v. *Strong,* (f) and *Jackson* v. *Staats,*(g) as sustaining the decision; but all these cases may be reconciled with the English authorities. In *Fosdick* v. *Cornell,* a new devisee, Mary, not named among the first takers, is introduced in the devise over. *Jackson* v. *Blanshan* presents the case of a definite failure, within *Right* v. *Day.*(h) *Moffatt* v. *Strong,* is a case of personal property; beside containing the additional provision, *in case either of the first takers should die leaving a wife behind him.* In *Jackson* v. *Staats,* the case of *Fosdick* v. *Cornell* is relied upon as deciding the principal point. Spencer, J. says, " what weighed much with the Court in that case exists here ; the devise over was to the surviving devisees in his will, among whom were his daughters to whom he had devised no part of his real estate." In this he was mistaken as to the fact; but it shows, what he understood to be the law, and the real ground upon which *Fosdick* v. *Cornell* proceeded. Indeed, until *Anderson* v. *Jackson,* the consideration of the word *survivor* was never, in any of our decided cases, necessary to restrain the generality of the limitation. There was always enough without this word ; and even in that case, the Court do not entirely rely upon it as the ground of decision. Yates, Senator, who delivered the opinion of the Court, speaks, generally, of the cases. He says,(i) " The testator clearly intended, that if either of his two sons should die without lawful issue, the survivor should take the whole which was devised to both ; and the only question is, whether there is any inflexible, rigid rule of law to wrest the plain and manifest intention of the testator to a purpose altogether different from what he intended. I am unacquainted with any such rule ; nor do I consider the cases cited, when collectively taken, to establish such a position. But if there are any such cases, let it be remarked, that the policy and genius of the British government are, in some respects, opposed to our own ; they encourage and support estates tail, as being important in forming family settlements ; they always lean in favor of the eldest son, as heir at law ; and to oust the devisee, they invariably incline to maintain some of the features of the feudal system,

ALBANY,
Dec. 1823.

Wilkes
*v.*
Lyon.

(e) 3 id. 292.
(f) 10 id. 12
(g) 11 id. 337
(h) 16 East,
67.

(i) 16 John
435.

which are so intimately connected with the splendor of a monarchy, and the wealth and dignity of an overgrown nobility.   On the contrary, it is the policy and genius of our republican institutions, to consider all the children of a parent as placed on an equal *footing*, and *to discountenance an aristocracy of wealth and influence.*"   He notices what Kent, Ch. J. said in *Moffatt* v. *Strong ;* " that the intent of the testator, according to the settled legal construction of terms, was to provide for the surviving sons, on the contingency of either of the sons dying, leaving no isssue at his death."

I have noticed this, and the cases which preceded it, sufficiently to show that it did not, and could not go upon the word *survivor,* but rather upon the presumption of a wish in the testator to use words which the law will not defeat. If this be the true principle which fixed the character of the devise to Joseph, we have a right to carry it over, to the devise under which Medcef claimed.   The testator acted here in view to the same statute against entails, which governed his ideas of the first devise.

Then, having established the position that these words, *without issue,* simply, and independent of the word *survivor,* mean a definite failure of issue ; the words afterwards used to pass the estate over to John Eden and Hannah Johnson, are substantially the same.   The testator having used words which amount to a definite failure ; when he uses the same words in the same will and in the sentence immediately following, the presumption is that he used them with the same meaning ; and this will carry the estate over to the ultimate devisees.   Otherwise you must say, that having the same purpose in favor of them, he yet, wilfully and knowingly uses words to defeat his own intent.   A fee simple defeasable goes to Joseph, say the Court, and by the devise over all his *estate* (share or part) goes to Medcef.   What was this *share* or *part*—this *estate* which is passed over to Medcef ? It is the *fee simple* of Joseph.   And yet shall we be told that in the hands of Medcef it was not a fee simple, but a fee tail ?   Medcef held under the separate devise to him, precisely as Joseph held.   Did Medcef's estate, in this share,

cease also on his death ?   If not, if the whole is to be deemed   ALBANY,·
Dec. 1823.
an estate tail in Medcef, the entire devise over to John Eden
and Hannah Johnson becomes inapplicable and must be   Wilkes
v.
Lion.
defeated and destroyed at his birth, contrary to the views of
the testator.   It is said the whole is converted into an estate
tail by the words of the devise.  This cannot be.  The words
in the second devise mean the same thing as those in the
first; or the last is nugatory.   The words are, " in case of
both of their deaths without lawful issue, then I give all the
property aforesaid," to the English devisees.  This never
can apply to one devise in one sense, and to another in a
different sense.  If so, they never could both die without
issue ; and the testator is made, absurdly, to say, " I will
send the estate over, though I have first provided that it
never should go over."

This rule that the same words used in different parts of
the same devise, shall be construed to mean the same thing,
is supported by authority.  Fearne,($j$) in commenting on   ($j$) Ex. Dev
367.
($k$) 3 P. Wms
258.
the case of *Atkinson* v. *Hutchinson*,($k$) says, " It is further
observable that there was a preceding limitation, upon the
death of either of the children, without leaving issue, to the
*survivors* of them.   Now this, strictly, was not applicable to
an indefinite failure of issue, because confined to a *survivor* ;
*and it was but reasonable to give the same words the same
construction in the subsequent limitation, which they must
bear in a limitation immediately preceding,'applied to the
same subject."*   In *Beauclerk* v. *Dormer*,($l$) Lord Hard-   ($l$)  2  Atk
312.
wicke says of the same case, " *Atkinson* v. *Hutchinson* is
plainly different from this ; though the plaintiff's counsel in-
sist that the last contingency in that case, is expressed as
generally as the contingency in the present; and taking it
as a single independent sentence, it is an authority ; but the
whole must be coupled together, and then the words, *if both
die without issue*, must be construed in the same manner
as the Court construed the former clause."   *Sheppard* v.
*Lessingham*,($m$) was a devise of bank stock, the first moi-   '$m$)  Ar  tJ
122.
ety whereof was limited over, expressly, on a dying with-
out issue at the death of B. ; and as to the other moiety, it
was bequeathed to the daughter for life, remainder to such
child or children of her, as should be living at her death :

ALBANY,
Dec. 1823.

Wilkes
v
Lion.

(n) Id. 125.

(o) 13 Ves.
476. Vid. id.
484, per Ld.
Chancellor.

and if she should not leave any child, or if all the children die without issue, then to J. S. The daughter had a son born, at the time of making the will. Ld. Hardwicke said,(n) " there is a different penning in the limitation of the last moiety. It is after a dying without issue generally ; but I am of opinion the same construction is to be put on those words, as on the words *without leaving issue*, in the other moiety, I consider, in general, that a limitation of a personalty after a dying without issue, is void ; but the court will put a construction on those words, (and *Pleydell* v. *Pleydell*, 1 Wms. 748 is material for that purpose, though the reasoning of the Lord Chancellor is ill reported ; for he considered the *dying without issue* as if it had been without such son. before described) and support the limitation over if possible." This case of *Sheppard* v. *Lessingham* was afterwards recognized and acted upon, and governed *Kirkpatrick* v. *Kirkpatrick*,(o) and in *Right* v. *Day*, (16 East, 67) where the first devise was properly limited, but the following one was on an indefinite failure of issue, Bayley, J. said, " the words dying without issue, as they occur in this will, do not mean a dying without issue indefinitely," and he held that the last limitation would be valid.

There is no exception to the rule, quoted from Fearne, that the construction of two several successive limitations, though the first be definite and the last indefinite, must be the same. Unless this be so, we have shown that a variety of strange inconsistencies are deducible from the case under consideration ; and in England, even without these peculiarities, the rule is the same.

Thus, in either event ; whether Joseph's estate was a fee tail and became absolute by our statute changing it into a fee simple ; or if *Anderson* v. *Jackson* be correct, the plaintiff in Error must succeed. In the latter event, judgment can only be for damages and costs ; but not for the term. There can be no change of possession.

But the late Ch. Justice, in delivering the opinion of the Court below, avoided the point, whether the last limitation over was or was not dependant on a definite or indefinite failure of Medcef's issue, as unnecessary to be discussed, be-

cause the vesting of the first limitation in possession turned the subsequent one into a vested remainder ; and he cites (p) 2 Saund. 388 b., where Serjeant Williams says, in a note, " With regard to executory devises, it is a rule that wherever one limitation of a devise is taken to be executory, all subsequent limitations must likewise be so taken. However, it seems to be established, that wherever the first limitation vests in *possession*, those that follow vest in *interest* at the same time, and cease to be excutory and become mere vested remainders, subject to all the incidents of remainders." He refers, says the Ch. Justice, to *Stephens* v. *Stephens*, (Cas. Temp. Talb. 228,) *Hopkins* v. *Hopkins*, (1 Atk. 581,) and *Doe* v. *Fonnereau*, (Doug. 487.)  " Cruise, (vol. 6, 517, tit. 38, ch. s. 26, 28,) and Fearne, (411, 419, 420, 6 ed. 526,) concurs in this opinion, and the adjudged cases fully support the rule as laid down by these learned commentators.  The case of *Brownsword* v. *Edwards*, (2 Ves. Sen. 243,) contains the same doctrine.  The estate, then, of John Eden and Hannah Johnson, was turned into a remainder when the executory devise took effect in favor of Medcef Eden.  The devise to them, then ceasing to be executory, Medcef became seised in fee tail, by necessary implication of law, with remainder expectant in favor of John Eden and Hannah Johnson."

Now, in order to comprehend this, we must understand, in the first place, that at common law, no remainder can be limited after a fee ; and the Court say, " because John Eden and Hannah Johnson's estate must be a remainder, we will turn Medcef's into an estate tail in order to support it." While the first limitation is executory all the subsequent ones must continue so, because all depend on the first.  The other rule is, that the subsequent estates are remainders in those cases only where they follow an estate which admits a remainder after it.(q)  The authorities cited by the Chief Justice establish this, and nothing more.  In *Stephens* v. *Stephens*, the remainder followed a fee tail.  A series of estates in tail male, are limited to the testator's grand-children, and these admit of a remainder.  These limitations vested as remainders, and so it would have been if the precedent devise had not been executory, but had vested im-

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(p) 20 John
489.

(q) Fearne
Ex. Dev. 392
in note.

Wilkes
v.
Lion.

mediately. The Court will find all the cases cited, to be of the same character. If the succeeding estate be, like the present, a fee, it cannot be whittled down to an estate tail, in order to give effect to a still subsequent estate, as a remainder.

But the Chief Justice turns the estate of Joseph into a fee tail to make it support a remainder. It was once, as he admits, within the case of *Anderson* v. *Jackson* a fee simple, determinable on a contingency, and accordingly he starts it as a fee simple from Joseph; but when it comes from him to Medcef, it is a fee simple absolute in Medcef under our statute;(r) and at the same time a fee tail, for the purpose of supporting a remainder over to the brother and sister of the testator. It is more than fish at one time, and flesh at another; it is fish and flesh, at the same time. I am at a loss to perceive how such an absurdity was arrived at, unless upon the principle with which the learned Judge set out, that " we have, fortunately, little experience with regard to estates tail."

(r) 20 John. 489, 90.

Between the years 1782 and 1786 words might be used creating an estate tail; but by the act of 1786 the statute *de donis* was repealed. Estates tail were abolished in terms, (1 Greenleaf's Laws, 205,) and in 1788 a statute passed abolishing and repealing generally all the statute laws of England, which ever had any force in the state, (2 Greenleaf, 116, s. 37.) This will was not made till 1798. Then how could there be an estate tail created by this will which might be turned into a fee simple? How could the Court make an estate tail after the repeal of the statute *de donis?* The *substratum* fails. In all the previous cases, involving this point, the wills were made previous to 1786, like that in *Jackson* v. *Billinger*.(s) No such thing as an estate tail was known at the execution of Eden's will. In *Cruger* v. *Heyward*,(t) the devise over was after the general words, *dying without issue*, and there was no qualifying clause; yet it was holden that the estate went over, upon the ground that, in South Carolina, there was no statute *de donis*—that the first devisee, therefore, took a fee conditional at the common law, leaving a reversion in the devisor, of which he had a right to dispose.(u)

(s) 18 John. 368.

(t) 2 Dessaus. 94.

(u) 1.1 112.

[THE CHANCELLOR, here expressed his determination to abide by the decision in *Anderson* v. *Jackson*. He now understood that case, distinctly to fix a construction upon the clause which devises to Joseph Eden; and was prepared to say that it did not carry an estate tail, but a fee, determinable on his death without issue then living.

WHEELER, Senator. It appears to me, the ground we took in *The New York Fireman Insurance Company* v. *De Wolf*, settles the course which we should pursue in this case.

ROOT, President. I think it difficult to say with what force *Anderson* v. *Jackson* may be brought to bear upon the subsequent clauses in this will, devising over from Medcef; and for this reason, I am opposed to, entirely, excluding that case from the consideration of the Court.]

*S. Jones*, (same side with the Attorney General,) here referred the Court to several cases :

1. To show that a will must always be construed as it should have been at the testator's death, he cited *Doe* v. *Fonnereau*, (Doug. 494, n. (1) there, per Ld. Mansfield, in reply to Rooke, arg.) *Bagshaw* v. *Spencer*, (1 Ves. Sen. 153, per Ld. Hardwicke,) *Evans* v. *Astley*, (3 Burr. 1581, per Ld. Mansfield,) and *Jackson* v. *Billinger*, (18 John. 381, per Spencer, Ch. J.)

2. To show that the will of Medcef Eden, the younger, was inoperative as to the premises in question, they being lands of which he was not seised at the time of his death, he cited *Bunker* v. *Cook*, (Gilb. Dev. 126, 136,) Rob. on Wills, 297, 8, 9, and the cases there cited ; *Goodright* v. *Forrester*, (1 Taunt. 578,) *Roe* v. *Griffits*, (4 Burr. 1961,) Bac. Abr. Maintenance (E) Phil. ed. 1813; *Campbell* v. *Sandys*, (1 Sch. & Lef. 294,) *Nichols* v. *Nichols*, (Plowd. 485,) 6 Cruise, tit. 38, ch. 3, s. 26, 28, p. 28, 29 ; Pow. on Dev. 184, 5, Phil. ed. 1822, p. 24, 154; 11 Mod. 128, (per Holt, Ch. J. in *Bunker* v. *Cook*,) 1 Rep. 153, and *Goodright* v. *Forrester, et al.* (8 East, 552, 563, 4, &c.)

3. To show that, if the interest of the lessor expired since suit brought, he can recover his damages alone, but not the

.term, he referred the Court to Runn. on Ej. 404 ; *England* v. *Slade*, (4 T. R. 682, 683,) Co. Litt. 285, a. ; Adams on Ej. 306, ed. of 1821, by Mr. Ruggles ; *Doe* v. *Bluck*, (3 Camp. 447,) and *Thrustout* v. *Grey, et al.* (2 Str. 1056.)

*M. Van Buren,* for the defendant in Error. For the affirmance of the judgment below, we rely on the following among other grounds :

1. It having been settled in the case of *Anderson* v. *Jackson,* by the judgment of the Supreme Court affirmed in this Court, that on the death of Joseph Eden, that part of the estate which was devised to him, vested in his brother Medcef, that point cannot now be questioned here ; more especially, as it was not made a point, or in any way raised for the consideration of the Supreme Court, but on the contrary was admitted by both parties to be the settled law.

2. That the devise, on the death of Joseph without issue vested in Medcef Eden an estate in fee simple.

3. The devise over to John Eden and Hannah Johnson is inoperative and void.

4. It is not allowed to the plaintiffs in Error to set up such an outstanding title as they claim that of John Eden and Hannah Johnson to be.

5. That the fine with proclamation, set up by the plaintiffs in Error, was void and inoperative ; and that if it were valid, its operation was avoided by the entry.

6. That it does not appear, from the verdict, that John Eden and Hannah Johnson are now, or were at the death of Medcef Eden the younger, alive ; and after the lapse of more than twenty years, the contrary is to be presumed.

Whether there was a possession, adverse to the claim of Medcef Eden, so as to prevent the operation of his will, cannot be drawn in question here. The demise is not from him alone ; but from Wood, also, his assignee. In truth *Frier* v. *Jackson,(v)* settles this point.

Whether we are to have, both the term and damages, c the latter only, depends principally upon the general que, tions in the cause.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

The general questions are among the most dry and intricate in the law. They are, of themselves, intrinsically difficult, and are rendered much more so, in some of their branches, by the mass of comment and refinement in which they are involved. It is important that they should be fully apprehended by the Court; and my object, therefore, shall be plainness and perspicuity. Medcef Eden the elder, his sons, and his brother and sister, are the persons before the Court. Medcef the elder died seised, in 1798 ; having the same year devised the great bulk of his property, in separate parcels, to his two sons, Joseph and Medcef, their heirs and assigns respectively. He then says, "Item. It is my will, and I do order and appoint, that if either of my said sons should depart this life, without lawful issue, his *share* or *part* shall go *to the survivor ;* and in case of both of their deaths, without lawful issue, then I give all the property aforesaid to my brother, John Eden, of Loftus, &c., and my sister, Hannah Johnson, of Whitby, &c., and their heirs."

Some years ago, Joseph died without issue, and Medcef, the younger, claimed the share devised to his deceased brother, as the *survivor* of that brother. The plaintiffs in Error resisted that claim, on the ground that the devise was void, as being limited on an indefinite failure of issue, a contingency which was too remote in the eye of the law. We said no—that the devise was good—that the testator intended the estate for Medcef in the event which had happened, to wit, a definite failure of issue.

This brings us to the first point of inquiry ; whether the devise to Medcef, the younger, being on a definite failure of Joseph's issue, is not good by way of executory devise.

At common law no man could devise, and this continued so till about the middle of the 16th century, when statutes (*w*) were passed conferring this right. Soon after, questions arose upon its extent, and the Courts were disposed to lean in favor of dispositions by will. At common law, one difficulty in conveyancing was that no fee could be limited after a fee. That law was averse to a perpetuity, on principles of correct policy. It checked commerce and improvement by tying up estates in particular families.(*x*) Nor could a fee

(*w*) 32 and 35 H. 8.

(*x*) 12 Mod 287. 1 Vern 163.

be limited to vest *in futuro*, unless based on a previous par
ticular estate reaching to the point of its commencement.
To remove these difficulties in favor of wills it was decla-
red that a devisor might do either by way of executory de-
vise. This was at first severely litigated, as tending to cre-
ate a perpetuity ; and hence the discrepancy between some
of the earlier cases. But towards the close of the 16th cen-
tury, the point was settled in favor of these devises, with
(y) Id          proper limits to guard against a perpetuity,(y) and has not
since been questioned. If the limitation is in such terms,
that it must, at all events, take effect within a life or lives in
being and 21 years and 9 months afterwards, it is good ;
otherwise void. Within this rule an estate could not be
limited to one on another's *dying without issue ;* for these
words had a technical meaning, at common law, signifying
an *indefinite* failure of his issue ; that is, the estate could
not go over until his children, and his children's children,
&c., to the remotest generation, were dead. To constitute
this indefinite failure of issue, his whole family must have
been extinct before the estate could go over. .Thus an ab-
solute perpetuity might be created. The old alarm arose,
which had restrained conveyances at common law. Policy
was violated by allowing an undefined latitude to the devi-
sor. But there is a *definite* failure of issue, which is when
a man dies without issue living at the time of his death.
From the time when the statute of wills passed, to 1620,
the question was often up, as to what the words *dying
without issue* signified ; that is to say, whether they meant
a *definite* or *indefinite* failure of issue. When these words
stood alone, it was universally agreed that they meant an
*indefinite* failure ; and the devise over depending upon it
was void ; and if there is nothing more in this case, to give
us the land would be uprooting the law from where it has
stood for centuries. If the limitation is to be read simply,
" If *Joseph dies without issue,* then to Medcef and his
heirs," our claim is gone. But there is more : it goes to
the *survivor* of the two sons, and it can go to him only
in the event of his *surviving.* Then you are free from the ob
jection that here is an *indefinite* failure of issue, because the
devise shows a clear intent that the question of failure should
be decided at Joseph's death. On *this word* we rely, and

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

unless authorities are overturned, this word must preserve us to the end.

This cause was brought before the Supreme Court, and the questions which it involved, upon the limitations over, were considered of a familiar every day character; but in *Anderson* v. *Jackson*, they were, for the first time, brought before this Court. Gentlemen were then heard upon them, in another man's cause depending upon the identical clause now under discussion; and the decision of the Supreme Court, in our favor, was affirmed, upon the very principle involved in the first point, to wit: that the word *survivor* restrained the generality of the words to *issue living* at the death of Joseph.

The dispute thus being, as we had supposed, settled in our favor, we called for the residue of the property not acted directly upon by the suit of *Anderson* v. *Jackson*. But our claim was still resisted. We commenced this, with other ejectment suits, for the recovery of that residue. Pending these suits Medcef Eden, the younger, died; having devised to his wife and her daughters.

In the first place, the old ground is taken, which we had litigated in *Anderson* v. *Jackson*. The decision there is said to have been erroneous; and that is the great and only material question in this cause. The decision I am called upon to support, and I proceed to do it with the greatest pleasure, because this court consent to hear me. It is perhaps proper; as the late Chancellor Kent gave a very long and learned opinion, sustained by a respectable minority, against the majority who gave the judgment. I also owe it as a matter of respect to this Court, to show that its decision is not to be shaken.

To do this, we must briefly review the history of the principle involved in that cause. The point is, simply whether a limitation to the survivor or survivors of two or more persons, on the other or others dying without issue, is *definite* or *indefinite*. This question came before the Supreme Court for the first time in 1806.(z) It was upon a will which contained the following clause : " Further my mind and will is, that if any of my said sons, William, Jacob, Thomas and John,

(z) *Fosdich* v. *Cornell*, 1 John. Rep 440.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(a) Id. 442.

(b) 1 P. Wms.
534.

(c) Jackson
v. Blanshan, 3
John      Rep.
292.

(d) Moffat v.
Strong, 10 id.
12.

(e) Jackson
v. Statts, 11
id. 337.

or my daughter Mary, shall happen to die without heirs male of their own bodies that then the lands shall return to the *survivors*, to be equally divided between them." This limitation was after a devise of part of his lands to his son William, and his heirs forever, and other lands to the other sons of the testator and this daughter Elizabeth, in fee simple. With a small material exception, that was precisely this will. The cause was fully discussed. A leader in that discussion, against the estate tail, was one of the gentlemen who oppose me here. Mr. Jones, for the plaintiff, there said,(a) " It is true, that if the devise over was on the *indefinite* failure of issue, the contingency would be too remote to render it an executory devise. (2 Fearne, 4th ed. p. 118.) But a contingency, that if a person die without sons or male issue, would be sufficiently near and probable ; *and in this case the event must happen within the lives of some or one of the devisees, as the remainder is to the* SURVIVORS *and not their heirs."* The Court decided that the limitation over was valid as being on a *definite* failure of issue ; and their reasoning is based on *Hughes* v. *Sayer*,(b) that the immediate limitation over was to the surviving devisee. Mr. Justice Thompson, who delivered the opinion of the Court, entered very fully into the English cases, as he ought, it being a question raised here for the first time ; and he finally, with the unanimous concurrence of the Court, decides the very same question we are now considering. That decision was submitted to. No writ of error was brought.

In 1808,(c) the question is again presented. Here, as in England after *Pells* v. *Brown*, the question is brought up, and the proposition again contested. The cause was argued, and the opinion of the Court was delivered by Kent, Ch. J. who decided that the word *survivor* quallified the general words.

In 1813,(d) the question is again discussed ; and Kent, Ch. J. again delivers the opinion of the Court in favor of the same construction.

But opposition was not yet subdued. In 1814,(e) the question was repeated, distinctly ; and Spencer, J. delivered the opinion. He says, "I believe none of us have ever doubted the

correctness of the decision in *Fosdick* v. *Cornell ;* and it would be a waste of time to review the authorities there cited."

In 1816, *our rights* became important ; and in the course of vindicating these rights we were brought into this Court, in 1818. We had then before us 13 years of unbroken adjudication, in affirmance of our rights, upon which we reposed with the greatest confidence. We were not deceived ; for, in *Anderson* v. *Jackson*, this Court gave sanction to our claim upon the point now in controversy.

But, we shall be told, the decision in *Anderson* v. *Jackson* was not unanimous. True, it was not so—a fact which we looked upon as somewhat strange ; for we had supposed the principle of that case as well settled as any one in the law. And it was peculiarly unfortunate that the opposition should come from that very quarter in which we had reposed our rights. Yes, the late Chief Justice (then Chancellor) Kent, gives an opinion, which occupies nearly 30 pages in the report,(*f*) to show that the decision of the Supreme Court had been grossly erroneous !

*(f)* 16 John 397 to 424.

How stood the point, upon authority, on coming into this Court ? The parties came here, to litigate upon a principle so fully and plainly established in the Supreme Court, that the decision of the cause there, though involving a large amount of property, was not deemed worth reporting. You saw that principle concurred in by Kent, Ch. J., Thompson, Ch. J., and Spencer, Van Ness, Yates and Platt, Justices ; after a series of discussion almost unparalleled in the history of any principle in our law. You saw the same questions arising, and the same principle established in neighboring states. From every source, opposition was hushed ; not only with men of books, but in the common walks of life. You knew that thousands of wills had been made upon that very principle, and that, if you unsettled the rule, you opened Pandora's box. You knew it more important that the *law should be settled*, than *how* it should be settled. You secured to us a principle which had been established in the mind of every man for a long time ; and you were right, for the contrary would have been incalculably mischievous.

But the propriety of your course was questioned by a long opinion from the late Chancellor, professing to show this series of adjudications, by the most enlightened tribunals in the state, legal heresy. It is my duty to examine that opinion. I confess I do this with reluctance. It was this, and not any fears from its effect, which led me to join in the preliminary objection, made by my associate, against this point being heard. In this we were overruled. The opinion lies in our way, and we must travel over it.

With deference; it is an opinion inconclusive in all its parts; and of the 26 cases upon which it is founded, there is but one which gives *color* to it. It contains an apology, and this was obviously right. An apology was due, for attempting to overturn a rule, after having suffered our citizens to go on, for years, settling their property under it; a rule, too, which the learned Chancellor himself, more than any other Judge had contributed to establish. "But if," (says Chancellor Kent,) " the decisions have been as settled and uniform as I have stated, it may be asked, how came the Supreme Court to make such a decision, as that now under review? I answer, that the present case was decided without going into any discussion of the merits, and by a reference merely to one or two former cases in the Supreme Court, all of which rested upon the case of *Fosdick* v. *Cornell*, (1 John. Rep. 440,) decided by that court in August, 1806. I was at that time Chief Justice of the Supreme Court; and though I did not give the opinion, I will not shelter myself under that silence. I am free to say, that I partook of its error. But I should be unworthy of public confidence, if, with more experience and more examination, having detected myself in an error, I should now be ashamed to confess it. I discovered, years ago, that the case of *Fosdick* v. *Cornell*, was decided upon mistaken grounds. The Court, however, have this apology for themselves, that without much examination, and without looking, as they ought to have done, deeply into the subject, they were led astray out of the beaten track, by such a distinguished leader as Lord Kenyon. The cases of *Porter* v. *Bradley*, (3 Term Rep. 143,) and of *Roe* v. *Jeffrey*, (7 Term Rep. 589,) were the blind guides

that misled them. I say this, confidently; for the Court do nothing more, in the whole opinion, than repeat what Lord Kenyon had spoken." In the decision of 1813,(g) the same Chancellor (then Ch. Justice Kent) says, "if the limitation rested solely on the words *dying without issue*, we have seen that it would fail; but the will proceeds, and gives the part of the son dying without issue, to the *survivors*, except the portion which was to go to the wife. The term *survivors* will be found to rescue the limitation from the operation of the general principle, and to bring it within the reach of other cases which have adjudged that expression to be the cause of a different construction; and, for the reason that it could not have been intended that the *survivor* was to take only after an *indefinite* failure of issue, as that event might not happen until long after the death of all the survivors." This goes, in words and letters, to the precise point now under consideration.

But in the decision of this and the previous cases, the authorities were not fully looked into. Was this so? *Fosdick* v. *Cornell*, was argued by as able counsel as any in the state. The report shows the ability with which it was examined. Thompson, J. goes into all the English decisions. To *Jackson* v. *Blanshan, Jackson* v. *Staats* and *Moffat* v. *Strong*, similar remarks may be applied. In all these cases the subject is gone over, not only by the ablest counsel, but by the ablest Judges, with the same result; and is it to be tolerated that this result shall now be questioned? Is any one to be tolerated in telling us that all these decisions *were lightly considered?* I wish the expression were not in the book.

But, "Lord Kenyon and the cases of *Porter* v. *Bradley* and *Roe* v. *Jeffrey*, were the blind guides which misled them." No. If you look into the opinions of the then Ch. Justice, Kent, you will see how fully he considers them. The leading case is *Pells* v. *Brown.*(h) True, this case was once questioned; but for more than 200 years it has not even been doubted, in any book of any country. It was treated by Lord Kenyon, by our Supreme Court, and by other Courts as the Magna Charta of the law on this question. But Chancellor Kent dissents from it. With the ex-

ALBANY, Dec. 1823.

Wilkes v. Lion.

(g) 10 Johns. 16.

(h) C. b. Jac. 590.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

ception of two or three nearly simultaneous cases, it never was questioned. Now we are to be told that Lord Kenyon was deceived and misled in his eulogium. There is not one case questioning that, which has not been overruled again and again; and no lawyer would now be heard to question it, in Westminster Hall.

It was at least to have been expected from the late Chancellor that he would have shed a new ray of light upon the question, putting doubt at defiance. But, I repeat it; out of 26 cases relied upon by him, *Chadock* v. *Cowley,*(i) alone, is against us. What is the point of inquiry? Is there something in this limitation which restrains the general words to a definite failure of issue? We say *survivor* does.

(i) Cro. Jac. 695.

The book of Assise(j) is first quoted by the Chancellor. But nothing was pretended in that case, to qualify the limitation. It was not to the *survivor*. In *King* v. *Rumball,* (k) the limitation was not to the *survivor*. *Pells* v. *Brown* is the next. *Holmes* v. *Meynel,*(l) was in other respects much like the present case, but this word *survivor* was omitted, in the limitation over. *Forth* v. *Chapman*(m) was a question as to personal property bequeathed upon the general words; and these, alone, were limited to a definite failure in such a case. In *Brice* v. *Smith,*(n) the word *survivor* does not occur; and *Hope* v. *Taylor*(o) was not a question as to a devise over. The first taker had issue which clearly gave an estate tail. In *Doe* v. *Fonnereau*( p ) Ld. Mansfield asked Serjeant Hill whether he had ever been able to find any case of real property, where the Court, on the words *in default of such issue,* had implied a restriction to *issue living at the death of the father;* and he said he had not met with any. And it is very true that no such case can be found. We do not contend for a limitation of these words, by mere implication arising from the words themselves. *Denn* v. *Slater,*( q ) the word *survivor* is not used, nor was there any provision that B. should die without issue in the life of C. So of *Doe* v. *Rivers,*(r) so of *Doe* v. *Ellis,*(s) but this case pre-supposes that the general words may be restrained by im-

(j) 35 Ed. 3 pl. 14.

(k) Cro. Jac. 448.
(l) T. Raym. 452.

(m) 1 P. Wms. 663.

(n) Wille's Rep. 1.
(o) 1 Burr. 268.

(p) Doug. 487.

(q) 5 T. R. 335.
(r) 7 T. R. 276.
(s) 9 East, 382.

plication from other parts of the will. *Tenny* v. *Agar*,(t) goes upon the general, unrestrained words. The devise over, was not to the *survivor*, but to a cousin who had not been before introduced. The Chancellor's cases do not apply. It is singular that not one of them can even be distorted into an application to the point in question. *Kirkpatrick* v. *Kilpatrick*,(u) the Chancellor admits is against him; and in *Barlow* v. *Slater*,(v) there were no restrictive words. The limitation over to one of the nieces for life, in that case, does not necessarily imply an intent that there should be a definite failure. This was the only point decided there. In *Romilly* v. *James*,(1) also, there were no words of restraint; and this a sufficient answer.

"I have thus," (says the Chancellor) "continued the history of the English decisions, from the time that we abolished estates tail, down to the present moment; and it must have been perceived that there is one undisturbed current of authority, as well since, as before our statute, declaring and establishing that such words as are used in the will of Medcef Eden, the elder, do create an estate tail; that they do mean an indefinite failure of issue."

*Chadwick* v. *Cowley*, decided about 200 years ago, I admit may be a case against us; but if it does interfere with *Pells* v. *Brown* it has gone to the shades. The latter case has been conceded to be the law, till questioned by Chancellor Kent in this Court. If, in a few instances about the time when it was decided, it was questioned, it has outrode the storm. Even *Chadwick* v. *Cowley* is reducible to questions peculiar to itself, and was capable of decision without interfering with *Pells* v. *Brown*. Intent is the polar star which guides in the construction of wills. Little, indefinable circumstances will sometimes indicate the intent and conflict with general rules. This consideration has led a learned Judge in Pennsylvania to say, that unless authorities on the construction of wills are in point upon every particular, they cannot govern.(w) The father had disinherited his eldest son; and the Court leaned in favor of a construction which would defeat his will. And this is

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(t) 12 East, 253.
(u) 13 Ves 476.
(v) 17 Ves. 479.

(1) 6 Taunt 263.

(w) Per Smith, J. 3 Yeates' Rep 236.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

o. Jac.

the key to the case of *Chadwick* v. *Cowley*.  The Court say,(x) " For the words *that the survivor shall be heir to the other if he dies without issue,* they seem to be an estate tail.  But if the devise had been that if *he died without issue in the life of the other*, or *before such an age*, that then it shall remain to the other ; then peradventure it should be a contingent devise in tail if it should happen, and not otherwise ;  but being, *that the survivor shall be heir to the other, if he die without issue,* that in his intent is an absolute estate tail immediately, and remainder limited over."  And that case may, even now, be law with the qualification which the Court give to it, without impugning *Pells* v. *Brown.*

(y) 2 Mass.
Rep. 56.

' (z) Id. 554.

(a) 5 Id. 500.

(b) 3 Yeates'
Penn.    Rep.
205.

(c) 1 Wash.
Virg. Rep. 71.

(d) 2 Munf.
Virg.    Rep
479.
(e) Cam. &
Norw.  N. C.
Rep. 202.
(f) 1 Bay's
N.   C. Rep.
80.

The Chancellor next proceeds to review some of the American cases.  That of *Richardson* v. *Noyes.*(y) is in our favor.  The words *survivor* or *survivors* were used to designate the second takers ; and these, among other words, are relied on for the very purpose that we urge them here ; and the limitation over was holden valid.  *Ray* v. *Enslin,*(z) is inapplicable, but the Court recognize the doctrine, in the abstract, which we contend for.  *Ide* v. *Ide,*(a) does not touch the point; but the Chancellor says, " *Hauer* v. *Shitz,*(b) turned upon the construction of peculiar provisions in a will, which are not at all analogous ;" but the truth is, we could not have found a stronger case in our favor.  The word *survivor* is expressly relied upon by the Court.  *Hunters* v. *Haynes,*(c) turned upon the general words alone, had no application for the Chancellor's purpose, but is in point against the premises passing to the English devisees.  The same remark applies to *Royall* v. *Eppes ;*(d) and *Denn, ex dem. Sutton and wife,* v. *Wood.*(e)  " In *Keating* v. *Reynolds,*"(f) (says the Chancellor,) "it was admitted, that the general words, *that if either should die without lawful heirs of their bodies,* appeared to look to an indefinite failure' of issue, but they held that the subsequent *words*"—What words ?  These words says the Chancellor, *without lawful heirs of their bodies to live,* " controlled the general words, and made a good limitation over by way of executory devise."  This was not so.  The bequest over was " equally to be divided between the *survivors.*ᵃ

This word *survivors* is relied upon by the Court as restrain-
ing the general words.    " This term *survivor*," say the
Court, " is a term of much import here.    It carries with it    , Wilkes
the idea of the longest liver, provided the other sister should    v.
leave no children behind her ; that is, none living at the    Lion.
time of her death."    The case is directly against the Chan-
cellor, and in point for us.    The same remarks apply to
*Jones* v. *Rice.(g)*                                              (g) 3 Desaus.
                                                                  165.
Now then, how stands the question ?    Does not the word
*survivor*, rescue this case from the general principle ?    Is it
not clearly so ?    This Court, then, decided right in *Ander-
son* v. *Jackson.*    For four years the law has been fixed by
a Court of *dernier resort.*    Men have gone to their graves
after having settled their estates upon the principles which
you have promulgated.    If erroneous, it is because the de-
cision was made by men.    You ought not to affirm it so
much because it was right, as because it was law.    There
is hardly a will settling real estate, which does not contain
the disposition in question.    It is the most common case in
a devise.    You have not the moral power to change your
ground ; because it is not right.    Who can know what the
law of this state is, unless your decision is final ?    Shall we
look into your decisions under the idea that they are to be
overturned by a new set of men, who shall come here to-
morrow ?    A change of decision with a change of men,
would be a less evil in the Supreme Court of this state, or
of the United States, because from the tenure of the Judges'
office, frequent changes are not to be looked for.    This
Court may change once in four years.    Are we, barely, en-
abled to say " these words meant a definite failure of issue
yesterday : but whether this will be law next year, I
will tell you after election ?"    The law of discretion, with
the best of men and the best of Judges, is more or less the
creature of prejudice or passion.    *Your decisions* should
be as stable as the constitution : They should be so in order
that the suitor may, at least, see one spot where there is an
end of uncertainty.

2. The simple devise over from Joseph to Medcef, under
the word *survivor*, would have given the latter a life estate
only.    But it is just as well settled as that two and two

ALBANY
Dec. 1823.

Wilkes
v.
Lion.

make four, that a devise over, as here, to John Eden and Hannah Johnson on both sons' dying without issue gener‑ ally, makes, by implication, an estate tail out of the prece‑ ding estate. Here, then, would have been an estate tail in Medcef Eden, had it not been for the statute of 1786.(h) This act declares, " that all estates tail shall be and hereby are abolished; and that in all cases where any person or persons now is, or are, or if the act hereinafter mentioned and repealed (act of 1782,) had not been passed, would now be seised in fee tail, of any lands, tenements or heredita‑ ments, by virtue of any devise, gift, grant or other convey‑ ance, heretofore made, or hereafter to be made, or by any other means whatsoever, such person and persons, instead of becoming seised thereof in fee tail, shall be deemed and adjudged to be seised thereof in fee simple absolute." The legislature thus lay down the rule, which governs this case, in terms. The estate to Medcef *would have been* in fee tail if the statute had not been passed. Having passed, it is transmuted into a fee simple.

Here we are met with this difficulty; that as the statute *de donis* was repealed before the will was made, no estate tail could exist; and, therefore, the statute does not operate upon this will. But the answer is very simple and obvious, At common law, a fee conditional to A. and certain heirs became absolute on the birth of heirs. This was put down at a very early period by the statute *de donis*, which it is said was repealed here in 1786. But this is a mistake. The statute *de donis* was not repealed; but its operation was changed; and the estates created or to be created un‑ der it are construed into a fee simple. Otherwise, we are thrown back to the old fee conditional. No such thing was intended. The legislature of this state in 1788, repealed, as mentioned on the other side, all the statutes of England, knowing that the statute *de donis* had been re‑enacted by this state in a modified form.(i)

3. The plaintiffs in error do not stand in a situation to avail themselves of the devise over to John Eden and Han‑ nah Johnson, even supposing it to be operative. Claiming adversely to the original source of title, they have no busi‑ ness with the right of third persons, who must rely for

(h) 1 Green‑ leaf's ed. of Laws, 205, s. 1.

(i) Vid. *Smith* v. *Chapman*, 1 Hen. & Munf. 300, per Roane, J., and *Eldridge* v. *Fisher*, id. 559.

that right upon the will, in defiance of which our antago-
nists hold on upon this property.

But the limitation was destroyed by the statute of fee
simple. It is singular that after struggling for years to show,
that we were cut of by the general words—that a limitation
to us as *survivor* could not save us—gentlemen should now
contend, that even without this word, or any other qualify-
ing circumstance, the estate should go over to collateral re-
lations of the testator. Our answer is, that the devise over
to them is void. Gentlemen, themselves, have shown it.
All the cases cited show it. *Jackson* v. *Billinger*,(*j*) de-
cides the very point. Such a limitation was overruled in
that case for want of the qualifying word *survivor*. If the
rule is to be altered, the legislature must do it. You must
administer the law as you find it.

But it is said, that the devise over to John Eden and Han-
nah Johnson, being in the immediate neighborhood of the
first limitation over, and following this, is to be taken as part
of the same clause; and, as such, it is controlled by the
word *survivor*, in common with the first part. Our answer
is, that it cannot be taken as a part of the same clause, but
is plainly and substantially distinct, not only in fact but
within the reasonable intention of the testator. The sub-
ject matter is different. This is a devise of the whole. The
first was only of a part. The ultimate devisees stand in a
different relation to the testator. The former were sons;
the latter a brother and sister. The feelings which governed
the devisor were different in the two cases. Nothing is more
rational than that before he would take the estate away from
his lineal descendants, they should be finally exhausted;
and to provide for this the words of the condition must have
been used in their largest sense, which imports an *indefinite*
failure.

The word *then*, in this devise, will not operate to restrict
the meaning.(*k*)

But the reasoning on the other side overturns this claim.
The testator uses words having a legal and fixed meaning.
Their contiguity to the previous words shows that this was
intentionally so. But whether intentionally or otherwise

ALBANY,
Dec. 1823.

Wilkes
v.
Lion

(*j*) 18 John
368.

(*k*) Harg
Tracts, 523,
arguendo.
*Beauclerk* v
*Dormer*, 2 Atk
311.

ALBANY, Dec. 1823.

Wilkes
v.
Lion.

(l) Counden v. Clerk, Hob. 33.

(m) 2 Ves Sen. 646.
(n) Id. p. 655.

makes no difference. Suppose a devise of Black Acre to A, and his heirs, and of White Acre to B., without adding *his heirs;* and admit that these last words are omitted accidentally; would the Court dare to say that both devises are in fee? They might as well repeal the statute of wills. According to the case from Hobart,(l) the Court will adopt the technical meaning, because these are no words indicating a different intent. Ld. Hardwicke, in *Garth* v. *Baldwin,*(m) refers to the words of the marginal note to Hobart, which, he says,(n) were known to be his words and in his emphatic style; and following him, remarks; " I am not in a Court of Equity to overrule the legal construction of the limitation, unless the intent of the testator or author of the trust, appears by declaration plain ;(1) that is, not saying it in so many words, but plain expression or necessary implication of his intent, which is the same thing." Is the mere location of the words in question, to change their legal and palpable intention?

(o) Atkinson v. Hutchinson, 3 P. Wms. 258. Beauclerk v. Dormer, 2 Atk 312. Sheppard v. Lessingham, Ambl. 122. Kirkpatrick v. Kilpatrick, 13 Ves. 475.
( p) Harg. L. T. 523.
(q) Ex. Dev. 361.
(r) In Forth v. Chapman, 1 P. Wms. 663.
(s) In Beauclerk v. Dormer, 2 Atk. 308.

(t) 1 Ves. Sen. 70

There are a few cases cited on the other side to this point.(o) *Atkinson* v. *Hutchinson* was mis-reported ;(p) but there is this general answer to them all. They relate to personal property, the rule in relation to which is different, on the head we are considering. The presumption need not be so strong as to carry over a bequest of personal property as a devise of real estate. You cannot entail personalty, and the Courts will seize upon almost any ground, however slight, to restrain the general expression. This distinction may be seen in Fearne.(q) In 1720,(r) both real and personal estate, were devised over in the same clause, after an indefinite failure of issue slightly qualified, and the clause was holden void as to the real, but good as to the personal property. In 1742,(s) Ld. Hardwicke says, that case was not decided upon a distinction between real and personal property, and it is indeed difficult to tell where the Courts have left this question in relation to the latter. In *Sperling* v. *Toll,*(t) the

(1) Hobart's marginal note (Hob. 33) is, "No man shall show me a case in law, where, by purchase, by devise to an *heir*, any may take that is not *heir indeed*, without declaration plain."

Master of the Rolls, again, glances at this distinction. This was in 1747. But as to real estate, the rule has never been disturbed; and the ultimate devise over is unquestionably void. The reasoning of the Master of the Rolls in *Sperling* v. *Toll*, is directly applicable. That was a devise to three nephews during their respective lives, as tenants in common; but if either died without issue living at his death, his part to go to the survivors, then over to 10 others. Two of the nephews died in the testatrix's lifetime, and the survivor left a son, who claimed the whole estate against the devisees over, on the ground of intent that nothing should go to the latter, till a failure of issue of all the nephews; but the Master of the Rolls speaks of it in this manner: "It is said, the intent was, that while there was issue of the three nephews, it should not go over; and that being executory, it should be so directed. The Court will always go as far as possible to support the intent; but that intent must appear from the words of the will. There are few cases, where evidence of the intent will be allowed out of the words. It only will where there is a doubt to whom the residue is given, or for ascertaining the nature of the legacy or the person of the legatee. If, then, the Court is so very cautious where there is evidence to prove the intent, much more ought it to be so, where that evidence arises only from the surmise of counsel or of the party. The Court is to carry the will into execution; not to make one for the party, or to give that construction which the Court should think most proper. If this matter was laid before the testatrix, she might think it reasonable, that it should not go over, while there was issue; and it might be very proper: but that does not appear from the words; rather the contrary. The plain construction carries it after the death of each respectively: and not to give a survivorship on the death of one without issue; for it is given in common, and *survivorship* was in the contemplation of the testatrix, as appears from her directing a survivorship for life; and having omitted it in the direction of the inheritance, it is reasonable to suppose that she did not intend it." The amount of these remarks is, that she had no survivorship in her eye, in the ultimate devise; and her

intention cannot be disregarded. Now can we extend the *force* of the term *survivor* to John Eden and Hannah Johnson when the *word* is not there?

That part of the Chief Justice's opinion has been assailed, which declares the limitation over to John Eden and Hannah Johnson to have been changed into a vested remainder on the previous limitation to Medcef becoming vested in possession; and we are told that there can in no case be a remainder where the previous estate is a fee simple, or will not admit of a remainder after it. True, when you have a remainder, you don't want an executory devise; nor can you have one. The office of an executory devise, is to carry over an estate, in those cases, only, where a remainder cannot do it: and wherever a limitation can have effect as a remainder it supersedes this office.(*v*) Now this devise over from Joseph to Medcef was not, in terms, either a fee simple or a fee tail. It would have been a mere estate for life, had not the words of limitation to John Eden and Hannah Johnson enlarged it into a fee tail,(*w*) which admits of a vested remainder after it.(*x*) Then here was a fee tail vested in Medcef, and what before followed it as an executory devise now followed as a vested remainder; or in the language of the Chief Justice, "The estate, then, of John Eden and Hannah Johnson was turned into a remainder, when the executory devise took effect in favor of Medcef Eden. The devise to them then ceasing to be executory, Medcef became seised in fee tail by necessary implication of law, with a remainder expectant in favor of John Eden and Hannah Johnson." This was the state and shape of the limitations under the common law, and the statute *de donis*, which, we have seen, still exists for the purpose of bringing about this state of things. It is enough that the right of Medcef Eden would have been an estate tail, previous to the statute, (1 N. R. L. 52.) It is then taken hold of by this statute and transmuted into a fee simple, as I have formerly shown. At common law, it might, as the Chief Justice remarks, have been destroyed, or made absolute in Medcef by a fine or recovery; in place of which our statute of fee simple steps in, and reaches this object without that ceremony.

(*v*) 2 Fearne,
4 ed. 1, 2, 3,
17 *Ludding-
ton* v. *Kime*, 1
Ld.    Raym.
203.   *Ives* v.
*Legge*, 2 T. R.
488, 9, n. a.
(*w*) *Ives* v.
*Legge*, 3 T. R.
488, n. a.
(*x*) 2 Woode-
son's Lec. 181.
1 Ld. Raym.
209. Lit. Rep.
347.   3 T. R.
488, 9, n. a.

*Craig* v. *Stacey*(1) coincides with the Supreme Court, and decides, in terms, that when an executory devise becomes vested in possession, the limitations depending upon it change their nature and become vested remainders.

*A. Burr*, (same side,) said, he should add but little on the three first points of the defence. The ability with which all the points had been examined by his associate, forbade his saying much in relation to either. He regretted that the decision in *Anderson* v. *Jackson* should be opened. He feared that even the stand then taken by the minority against that decision might with some of them have been owing to Mr. Eden's unfortunate selection of one of his counsel; but he was happy in the belief that he had nothing like prejudice or feeling to encounter in this Court.

(1) Irish Term Rep. 249.

On Joseph's death, the case of *Anderson* v. *Jackson* carried all the estate devised to him, over to his brother Medcef. That case, however, merely settled the *point;* it did not act upon *all the land;* and instead of abiding that result, and surrendering the residue peaceably, the possessors determined that we should fight them in detail.

It is the disposition of man to hold property, during his life, above control; but to shackle it forever afterwards. Having children, he will give it to them for life, and confining it to his lineal descendants as long as possible, then over. But the law will not allow you to limit on an event beyond a life or lives in being and 21 years and 9 months afterwards, for fear of a perpetuity. This is a worse evil than an *entail*, for the latter may be docked by a fine or recovery. This remedy will never reach an executory devise. Once fix a principle which shall carry over this estate to John Eden and Hannah Johnson, and you establish an entail which no power can cut off. The contingency upon which it turns, is too remote. You will not allow the limitation, because there is no limitation to it. It was given to the sons and their heirs, and it was his obvious intent that their issue or descendants should enjoy to a period indefinitely remote. Suppose they had died immediately after the testator, leaving issue, (which latter is always a

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

probable event in this kind of limitations,) it was his intent
to carry it to the issue, their children and children's children,
till they should fail; thus confining it in the family, and
shackling it against the freedom of alienation, for ages.
The time when it should pass over to the ultimate devisees,
or their heirs, was undefined, and the fee simple of the
estate might have been in abeyance for a long time, because
it could have no absolute owner. No one could purchase
it. This is the evil intended to be reached by *Jackson* v.
*Billinger.(y)*

(y) 18 John.
368.

The plaintiffs in Error repose themselves, entirely, upon
the further question, growing out of Medcef Eden's death;
and they say it is only in reference to this that they have
reviewed *Anderson* v. *Jackson.* They say, "True, we have
no title; but John Eden and Hannah Johnson of England
have. They are the owners and we claim to hold against
all the world except them." But what is the reason of this
rule? It is that the possessors should be subjected to dam-
ages and costs but once; and that rule is satisfied in this
case. They would have been shielded by surrendering to
Medcef Eden and paying his costs and damages for the
time during which they admit his estate to have continued.
They purchased Joseph Eden's life estate which expired
many years ago. The title of John Eden and Hannah
Johnson, if they have any, arose only in 1819, and had the
plaintiffs in Error surrendered the whole land then, as in
duty bound to do, they could not have been subjected to
any further action at the suit of the English claimants.
They attempt to avail themselves of the rule, in their own
wrong. It is their fault if suits are to be multiplied upon
them.

There are various principles upon which this cause must
be decided against them, even conceding the title which they
set up in the English devisees. In the first place, to avail
thmselves of a title in third persons, they must show them-
selves connected with that title.(z) The question is, who
has the better title between these parties? This is a fami-
liar principle in the writ of right.(a) An ejectment being a
mere substitute for the writ of right it would be an absurdity
that on a special verdict, in that action, the rule should be dif-

(z) *Knox et
al.* v. *Jenks,* 7
Mass. Rep.
488.
(a) *Nase* v.
*Peck,* 3 John.
Cas. 128.
*Green* v. *Liter
et al.* 8 Cranch,
250, *per Cur.*
as to the 8th
question.

ferent ; and it is really the same in both.(*b*) *Jackson* v. *Davenport*(*c*) does not form a rule for this case ; because the defendant not only showed that the life estate upon which the plaintiff sought to recover had expired, but he went further and showed a title to the reversion in himself ;(*d*) and the opinion of Ld. Kenyon, in *England* v. *Slade*,(*e*) cited on the other side, has been overruled both in England and this country. It is inconsistent with *Jackson* v. *M'Cleod*,(*f*) decided by the Supreme Court of this state.

Again : the plaintiffs in Error entered under an estate in privity with the successive estates of Medcef Eden, and John Eden and Hannah Johnson, to whom, according to their own ground, the reversion has successively passed. On the expiration of Joseph Eden's life estate, which they purchased, they were the tenants of Medcef Eden, and are estopped from questioning his title, although it may have expired. They must surrender the possession,' and then the rights of third persons may be litigated. They have no right to set them up, in this form. They come directly within the principle of *Jackson* v. *Steward*,(*g*) *The same* v. *M'Cleod*,(*h*) and *Jackson* v. *Ayers*, (14 John. 224.) They held in trust for Medcef after his brother's death ; and he may call upon them at all events to surrender the trust. That they had no more than Joseph's life estate, was expressly decided by the Court below, and has not yet been questioned here. They do not pretend to hold under the authority or grant of the English devisees. The lease to Lion was not a fiction, as is usual in ejectments. It was an actual lease for 15 years, executed on the premises when entry was made to avoid the fine. This is a good and subsisting title or interest against all the world except the reversioners. The lessee has a right to his possession till disturbed by those having the inheritance. He was rightfully in possession under the title of the lessors ; and this prior rightful possession cannot be questioned by the plaintiffs in Error, who are no more than mere strangers to the reversioners, beside being shackled by an estoppel arising from their privity with the lessors of the plaintiff. None but the reversioners can be heard. Till avoided by them,

ALBANY,
Dec. 1823.

Wilkes
v
Lion.

(*b*) 3 Wheat,
224, n. (a)
*Doe* v. *Staple*,
2 T. R. 696,
per Ld. Kenyon, Ch. J.
(*c*) 18 John.
295.
(*d*) Id. 302,
per Spencer,
C. J.
(*e*) 4 T. R.
682, 3.
(*f*) 12 John.
182.

(*g*) 6 John,
Rep. 34.
(*h*) 12 id.
182.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(i) 9 H. 6,
43, Br. tit. A-
vowry,    123.
Vaughn, 46.
(j) Vol. 4,
Phil. ed. p. 18,
&c.

(k) 9 H, 6,
43. Br. tit.
Avowry, 123.
Bac.      Abr,
Leases,   &c..
(C.) 1, 4 vol.
Phil. ed. p. 17.
Dixon v. Har-
rison, Vaughn,
46, states this
case.

the lease to Lion remains good. It is Medcef Eden's lease, and he and his heirs might avow upon a distress for rent under it.(i) It was not void, but merely voidable by the act of the reversioners, and might have been affirmed by their act. A variety of cases to this effect are collected in Bac. Ab. Leases and Terms for years (D.).(j ) The English Courts refuse to act upon the rights of third persons, when they are not before the Court. A husband, during coverture, gives a lease of his wife's land ; if the wife dies without issue by him, the husband's title is gone, but no one except the reversioner can avoid the lease. The lessee cannot do it, because the lease was drawn out of the seisin of the wife.(k) Lion, the lessee, holds for the next person in interest after his lessor. Thus the relations in which the plaintiffs in Error stand, forbid this defence.

But it is said this is a limitation to Joseph Eden and Hannah Johnson, upon the condition that Medcef should die without issue in their lifetime. To arrive at this, in positive violence to all meaning, you are asked to misplace the word *survivor* in the sentence, to put this word in, where it was purposely omitted. Having gone thus far, and said that the ultimate devisees were entitled as·*survivors ;* you are then asked to go a still greater length of absurdity by saying they are alive—that they did survive—and thus bring them within the terms you have manufactured ; and this too, without one particle of proof that they have ever been heard of since the year 1798. They were alive, it seems, when the will of Medcef Eden, the elder, was made, and this is the last we hear of them. You know nothing that they survived. One not heard of in 7 years shall be presumed dead, in analogy to the statute of bigamy.(l) In *Doe* v. *Jesson,(m)* Ld. Ellenborough said, " As to the period when the brother might be supposed to have died, according to the statutes (19 Car. 2, c. 5) with respect to leases dependent on lives ;(n) and also according to the statute of bigamy, (1 Jac. 1, c. 11,) (o) the presumption of the duration of life, with respect to persons of whom no account can be given, ends at the expiration of 7 years from the time when they were last known to be living. Therefore, in the absence of all other evidence, to show that he was living at a later period,

(l) 1 R. L.
113. This is
now five years.
(m) 6 East,
85.
(n) 1 R. L.
N. Y. 103.
(o) 1 R. L.
113.

there was fair ground for the jury to presume that he was
dead at the end of 7 years from the time when he went to
sea on his second voyage, which seems to be the last ac-
count of him." Why then is survivorship not on the record ?
It lay with the other side to show this fact to bring the case
within their own terms. Without this, their limitation fails
for want of lives to support it. Admit that the limitation
vested in them during their lives : if they died before Med-
cef Eden, this reversion descended to him, as their nephew
and heir. He is the nearest connection appearing on the
record ; and the Court cannot intend that any one of the
blood of the devisor stood between him and the ultimate de-
visees.

*S. Jones,* in reply. The great features of this cause, as
to fact, are in a narrow compass. On the death of Medcef
Eden, the elder, the two sons entered, and were deemed
seised in fee simple absolute. Joseph Eden's estate was sold
to *bona fide* purchasers, upon judgments obtained against
him. These purchasers bought upon the faith of a valid
title in fee. The representatives of the debtor himself, now
come to tear this estate from us ; and whatever our claim
may be, I trust that such claimants will not find counte-
nance in this Court.

The whole question arises on the words of the limitation.
The testator devised certain parcels of land to each of his
sons, Joseph and Medcef, in fee. Joseph entered, died with-
out issue, and you said his estate went over to Medcef. He
also died without issue ; and where is the foundation for the
pretence that it does not go over to John Eden and Hannah
Johnson ? In common sense the words of both limitations
are plain. According to this, the whole estate is gone over
from Joseph and Medcef, and we are to remain in possession
till one comes who has right. If the plaintiff recover, some
technical rule must be applied in order to exclude us.

It is said that the technical meaning of these words, *dy-
ing without issue,* is an indefinite failure of issue. But they
have two meanings. One is the natural import, a failure of
issue at the devisee's death. This is the meaning which we
apply in talking of our common affairs. On the other hand,

ALBANY,
Dec. 1823.

*Wilkes*
v.
Lion.

(p) 2 Ves.
sen. 646.

it is said technically to mean an indefinite failure; that is, suppose the devise to have a family, and that family to continue down for ages : the devise looks to such an event. I is immaterial to us which is meant: if an indefinite failure the whole vested in the first devisee : if definite, the whole goes to the devisees in England.

You are examining the question of intent, as gentlemen have proved from *Garth* v. *Baldwin.*(p) You never go to the technical meaning, unless the case is stripped of every circumstance by which you can infer that the testator intended to depart from that meaning. And is it possible, when he says, that *if both these sons die without lawful issue, then over*, he means it *shall not go over* ; though immediately before he so expressed himself in the same words as to carry over the same estate to the intermediate devisee ? The whole is in the same single clause. If the estate of Joseph does not go over, what is the effect of the clause? This estate starts, on the testator's death, as a fee simple, and comes as such to Joseph ; but on his death the same estate goes over to Medcef as a fee tail. Can you limit an estate tail upon a fee simple ? A fee tail is sometimes limited over from one to another; but then it is a fee tail from the beginning. That it should start a fee simple and end a fee tail, is a thing unheard of. The operation of this clause is the same on the estate originally devised to Medcef Eden. Both must go over, if either does. You cannot separate them. Their destination is the same. One cannot go, and the other be retained. Joseph became invested with a fee, subject to the contingency of dying without lawful issue. Having issue, his estate would become a fee simple absolute., Not having issue, you said in *Anderson* v. *Jackson*, that it was a fee simple conditional, and you carried it over to Medcef. Now you are asked to change it into a fee tail.

But take the last limitation, *per se.* It is in case *both die without issue*, either definitely or indefinitely. It is the same as to both. Now suppose one to have died without, and the other with issue ; is it to be construed definite as to one, and indefinite as to the other? Shall one half go over and one half remain ? Is this an executory devise as to

one half, and as to the other an estate tail ?   Take the case
put by the late Chancellor in *Anderson* v. *Jackson*.(q)
Suppose the two sons had died leaving lawful issue which
had died a few days after their deaths ;  the estate could not
go over.   The words have the same sense in both members
of the sentence.   If there was issue, it remained ; if none, $_{40}(q)$ 16 John
it went over.   It must either be an estate for life with cross 40 l.
remainders, in fee tail, or an executory devise.   You can-
not give this effect to one part of the phrase, and withhold
it as to the other.   How is it made out an executory devise
as between the sons, and not as between Medcef Eden
and the ultimate devisees ?  *Survivor* is not, of itself, a word
of limitation.  *Dying without issue* are the words of limita-
tion ;  and this, it is said, was restrained and made definite
by the word *survivor*.   But why may it not apply to the
survivorship of Joseph, either with or without a child ?  If
it does restrain the import of the general words, it is by
way of showing the intent.   The whole operation is upon
the meaning.   This being ascertained, what will you say of
the same expression, in the same sentence ; and in relation
to the same estate ?   Could the testator speak, would he
say, " I meant one thing by these words till I came to Med-
cef Eden, and another by the same words in the same sen-
tence, in relation to the same subject matter, when I came
to the final devisees ?   These words cannot be disconnected.
The fallacy is, in considering the second *dying without
issue* a different event from the first.   The testator speaks
first of *either* of his sons dying without issue, and in the
same sentence of their *both* dying without issue ; and the lat-
ter is connected in sense, as well as in phrase, with the first.
Without a contradictory sense, you cannot sustain the judg-
ment of the Court below.   The well settled rule is, that you
are to construe the will according to the circumstances, as
they exist at the testator's death.   The estate, as it started
at the death of the testator, was plainly one in fee simple.
Look to the period of his death.   Is there any doubt of this ?
He then says, " I give A. to Joseph and B. to Medcef, each
in fee ; but if *one* die without issue, his share to the other ;
and if *both* die without issue, the whole to John and Han-

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

nah." Are not these executory devises? If they are not so, no estate can go over, in virtue of these words. The only reason why a devise like this is ever construed to create an estate tail, is in order to support an ulterior vested remainder, because you can find no other particular estate to support it. Yet the Court below say, you cannot construe this limitation over, an executory devise, because the second was an estate tail, which was turned into a fee by the statute. This was calling it an estate tail, for the very purpose of destroying the limitation over, which should have been sustained if possible.

Slight words indeed are enough to restrain the generality of the expression *dying without issue*. In *Pinbury* v. *Elkin,(r)* the bequest was, *if she shall die without issue, by the said testator, then after her decease*, £80 shall remain over; and the Lord Chancellor seized on the word *then* to carry over the bequest. That word is here. The phrase is, "and in case of both their deaths, without lawful issue, *then* I give all the property aforesaid to my brother," &c. The case cited shows what slight circumstances the Court will seize upon in order to give effect to a devise. The argument cited from Hargrave's Law Tracts, (523,) admits our general ground; but it is a sufficient answer that this argument was overruled in the very case where it was put forward.

(r) 1 P. Wms. 563.

The authorities cited in the opening, are abundant to show that the whole phrase must be taken together; that the same words in the same phrase must be understood in the same sense. There is no magic in the word *survivor*. The word *other* would have been enough; as if the testator had said, in case either die without issue, then to the *other*.(s) In *Kirkpatrick* v. *Kilpatrick*,(t) the Lord Chancellor says, "the question upon the limitation over of this personal property, in the event of both dying without issue, under the age of 21, is a mere question of intention as it may be judicially collected from the whole will. If that limitation was intended to take effect after an indefinite failure of issue, it is too remote; if the failure of issue was confined to the death of the survivor, the limitation is valid." The reason that the words, *dying without issue*, in *Forth* v. *Chap-*

(s) 13 Ves. 483.
(t) 13 Ves. 484.

*man*,(u) were construed differently in the same sentence was because they referred to different subject matters; that is, to real and personal property respectively. As to *Sperling* v. *Toll*,(v) there was no intention of survivorship beyond the life estates; but the word *survivor* is used here to explain what is meant by the general words; and it comes back to the question; with what intention were the same words used subsequently?

If the estate were open, I should contend that this was an estate tail from the beginning; but I shall not, after what has fallen from the Court, press a re-consideration of *Anderson* v. *Jackson*. Though I agree, that security is found in uniformity of judicial decision; that this is the ark of our safety; that the maxim *stare decisis* should, generally, be applied; yet I do adjure this Court never to forego the practice of reviewing their decisions, where they have committed a plain error. Refuse to hear an argument, if there is even *doubt* on looking into the case; but where a great and alarming evil is to grow out of a monstrous error, the Court ought, unhesitatingly, to revise and correct it. This is the law of the House of Lords and of this Court.

It is due to the Chancellor, who dissented in *Anderson* v. *Jackson*, to say that the mere word *survivor* would not affect the technical meaning of the words *dying without issue*. There were no cases to this purpose produced upon the argument of that cause, except *Porter* v. *Bradley*,(w) and *Roe* v. *Jeffery*,(x) decided by Ld. Kenyon, since the revolution, and some of our own cases bottomed on the authority of these. The two cases decided by Ld. Kenyon, were professedly grounded upon *Pells* v. *Brown*,(y) but were not supported by it; and the constant tenor of the previous decisions were opposed to him. We now produce two cases from Croke, which are pointedly against him, and one of them (*Chadwick* v. *Cowley*) (z) is admitted to be so. The same question had been before agitated, and received a corresponding decision in *Clache's case ;*(a) and *Chadwick* v. *Cowley* is cited as law in *Fortescue* v. *Abbott*,(b)

---

ALBANY,.
Dec. 1823.

Wilkes
v.
Lion.

(u) 1 P. Wms.
663.
(v) 1 Ves
Sen. 70.

(w) 3 T. R.
143.
(x) 7 Id.
585

(y) Cro. Jac.
590.

(z) Id. 695.
(a) Dy. 330
b, Mich. 15 &
16 Eliz.
(b) Pollexf.
487.

(c) 2 Fearne,
4th ed. 203:

*Roe* v. *Scott & Smart*, in Easter Term, 27 Geo. 3,(c) reject‐ ed the word *survivor* as having no influence in a similar case. Indeed, it is my entire conviction, that if this question were *res integra*, the devise to Joseph Eden would be holden an estate tail. The very consequence of this being an estate tail in Medcef Eden, had it been *foreseen*, would have been a most conclusive argument in favor of the first limi‐ tation being so too. The contingency is the death of both. Suppose Joseph to have had issue who had died after his death, would not this still be an estate tail in Medcef. Would not both estates go over on the double contingency ? If you mean this as to one estate, you must mean it as to the other. Then there was a condition on the devisor's death, that on both dying without issue indefinitely, the whole should go over ; but you are called upon to change the na‐ ture of the event ; to vary the meaning of the will and dis‐ appoint the remainderman, upon the mere ground that the estate has changed hands ; to make it a fee simple at one time, and a fee tail at another. We now no longer ask the aid of the rule which would make this an estate tail in Jo‐ seph. The moment you settled in *Anderson* v. *Jackson* that it was an executory devise, it carries us to the same point. You have changed the whole face of the will, and made it executory in all its parts ; and there is no other way but by carrying it over, that you can rescue the will from contra‐ diction and absurdity.

We might adduce many American cases to show the strong leaning of the Courts in favor of the natural mean‐ ing of the phrase *dying without issue*. The English Judges have used strong expressions to the same effect. In *Bigge* v. *Bensley*,(d) Lord Thurlow said to the Attorney Gen‐ eral, " I agree with you, that the general sense of *dying without issue*, is at the time of the death. That is the gram‐ matical construction, and is the sense, in general, of those who use the words ;" and Ld. Hardwicke said *there was no doubt of the real intention* in *Beauclerk* v. *Dormer*,(e) though he held it different from the technical one. In *Porter* v. *Bradley*,(f) and *Roe* v. *Jeffrey*,(g) Ld. Kenyon expressed himself to the same effect ; and the whole was

(d) 1 Br. Ch.
Rep 187.

(e) 2 Atk.
309.
(f) 3 T. R.
143.
(g) 7 T. R.
585.

treated as mere matter of intention. In *Anderson* v. *Jackson*, the same doctrine is advanced as the principal ground of the decision; and no very particular reliance was there placed upon the word *survivor*.

One mode, by which to avoid the natural meaning of the words, would have been by giving to Joseph and Medcef estates for life, which would have supported the limitation over as a remainder; but these estates were expressly. in fee, which were carried over to the survivor by the words *his share or part shall go*, &c. In *Jackson* v. *Merrill*, the words *their part* carried over an estate as extensive as the preceding one, which was, in that case, a fee simple. So here the whole interest necessarily goes over, as well as the subject of that interest.

But if it is to be considered a life estate, it was only so in Joseph's part. Medcef's estate remained a fee simple; and you cannot avoid the absurdity of limiting a remainder in tail upon an antecedent fee, if you affirm this judgment of the Supreme Court. Their opinion was probably with us, upon the point which they mentioned; "that as the whole devise is in one sentence, and the devise over to persons *in esse*, the same common intent is applicable to the limitation over to the brother and sister of the devisor, if both his sons should die without issue; and that the same consequence would follow." But they cautiously omitted deciding this point; going on other and erroneous grounds. The decision of that point would have settled the whole matter; but they chose to go upon a point in relation to which we were not heard before them. The *ulterior* remainder was to persons *in esse*; and the word *survivor* would have been nonsense. The devisor must have intended throughout the whole devise, either a definite or indefinite failure of issue. There is no doubt what their opinion must have been upon this point.

The Court below, put themselves on the ground, that the estate of John Eden and Hannah Johnson was turned into a remainder, when the executory devise took effect in favor of Medcef Eden. Now an executory devise, limited upon a previous devise in fee simple, never can turn into

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

a remainder ; nor did a devise, executory in its own nature, ever undergo such a change. It either fails for want of the condition happening, or it continues executory. After a vested fee, as here, the limitation over must, in its nature, be executory. When Joseph died, he had a fee simple, which was defeated by his death without issue. The estate did not vanish, but went over to Medcef. It must, according to the Supreme Court, have vested in Medcef Eden before it could change into a remainder—upon what? Why, upon Joseph's estate in fee simple. Medcef had a part of the lands in fee upon the first devise ; and as to the other half, this being an executory devise, was also vested in him as such. The Supreme Court agree that the limitation over from Joseph to Medcef was an executory devise. Now the authorities cited to show that on the vesting of the first estate the limitations over became also vested as remainders, relate to that kind of remainders which are executory devises, not in their own nature, but for a time ; as where the limitation was to A. for life, with remainder to his unborn son in tail ; then to the unborn son of B., for life, remainder to his unborn son's son in tail, remainder to the unborn son of C. in tail, &c., and then over in fee. This was the case of *Hopkins* v. *Hopkins*,(h) cited by the Supreme Court and Serjeant Williams. It was agreed that if A. had lived and come to his life estate, the following estates would have been contingent remainders ; but he having died before the testator, they were executory devises. Upon the same principle that they would have been contingent, they would have been vested remainders on the first estate coming to A., if there had been any of the *ulterior* devisees for life, &c., *in esse*. It happened in that case, that none of the takers, previous to the ultimate devisee, were born at the time of the testator's death ; and the right of the last devisee was adopted as an estate of necessity to supply the vacancy. The whole estate went to him *ad interim ;* and the previous estates were executory only as being suspended. They were, in their nature, remainders. *Stephens* v. *Stephens*(i) is still less in point. There the limitation was to A. and his heirs ; and if he should die before 21 years of age, then to such son of B. as should

(h) 1 Atk. 580.

(i) Cas. Temp.
Talb. 228.

attain 21 years, and the heirs male of his body; and in default of his having a son, who should attain that age, then to such daughter or daughters of his as should attain that age, and the heirs of their bodies; and in default of these then over to C. in fee. The whole question was whether the devise to the son who was afterwards born, but had not attained 21 years of age, or to the daughters, &c., was not too remote.

In *Doe* v. *Fonnereau*,(*j*) the estate was conveyed by the testator to his eldest son for life; and he afterwards devised it, from and after his decease, to the heirs male of his body, and in default of such issue to his other sons, &c., in tail male, and for want of such issue to his right heirs; and all the Court say is, that the life estate conveyed to the son, and the after devise to the heirs male of his body, did not unite so as to form an estate tail in him—that if he had a son the subsequent devise in tail would vest as a remainder, but not having a son, it was an executory devise according to the event. They were not contingent fee simples, and executory devises in their own nature, as here. There was no change. They began and continued estates tail throughout, and were in their nature capable of being sustained as vested remainders.

The Court below relied upon Williams' note to 2 Saunders, 388 h; but this commentary misled them as to the nature of the limitation. Williams uses the language cited by the Court, but by referring to the note, it will be seen to correspond with what we contend for. It is founded on the three cases which I have considered, and refers to the nature of the estate. I challenge the production of any case where a devise, in its own nature executory, was ever turned into a remainder. Something of this kind was contended in *Craig* v. *Stacey*.(*k*) There, in the first place, estates tail were, apparently, limited upon a contingent fee. The estate was devised to an unborn child, if a female, and her heirs; but if she die before marriage, then to A., and the heirs of her body; and on the failure of them to B., and the heirs of her body, &c. A female child was born, who died unmarried. A. died leaving two daughters, who died without issue, and the estate was claimed by B. The objection

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(*j*) Doug.
487.

(*k*) Irish T
Rep. 249.

was made that the limitation to her was on a contingency too remote, viz. the indefinite failure of A.'s issue; and it was said that, in the three cases, from Atkyns, Cas. Temp. Talbot and Douglass, there was no previous limitation of the entire fee, as in that case; the very objection we make here. The Court admit the distinction, saying that the first devise was not a fee simple, but was equivalent to a fee tail. The Court doubted throughout, whether the whole were not to be considered an estate tail *ab initio;* but the estate tail having clearly vested in the daughters of A., it removed the difficulty; for both the precedent and subsequent estates then in question were estates tail, and capable of subsisting together as concurrent vested remainders. Both Fearne(*l*) and Cruise,(*m*) also relied upon by the Supreme Court, must be taken with the same qualification. Suppose a devise to A. in fee, and if he die without issue living B., then to B. in fee; and if he die without issue living C., then to C. in fee. These are plain executory devises throughout. Now suppose A. dies, living B., who takes the estate as owner? Does C.'s estate turn into a remainder? On what? On B.'s executory devise? That would be a remainder on a fee. The case supposed is precisely the one now under consideration. The Supreme Court turn the devise over to the English heirs into a remainder on Medcef Eden's fee.

It is singular that the statute of 1786, should be eulogized, if it has the strange operation of changing the devise into an estate tail, for the purpose in a round about way, of making it a fee simple in Medcef Eden. An executory devise of this nature always passes over, or becomes a fee. It never becomes a fee tail. A *limitation* is always, strictly speaking, of remainders. We speak improperly when we say, *limitation of executory devises.* They come in by way of substitution. If one does not take effect, the other comes in its place; and this is the reason why it is not destructible by fine or recovery. A fine by destroying the first estate, destroys all the remainders *limited* upon it. Not so as to executory devises, for there is no connection or dependence between the estates. The case of *Right* v. *Day,*(*n*) as it is stated in the marginal note, amounts to this: A devise to the son in fee, and if he die before 21, and should leave no issue, then to

(*l*) Ex. Dev. 411, 19, 20–6, ed. 526.
(*m*) 6 Cr. tit. 28, ch. 20, s. 26, 28.
(*n*) 16 East, 67.

the daughter and her heirs male or female ; and in case both die *leaving no issue,* then to his cousin and his heirs ; the son takes a fee with an executory devise to the daughter, with another executory devise over. These are thus considered executory devises throughout, being such in their own nature, although the first estate had vested.

The case of *Right* v. *Day* is also in point, to show what slight words will qualify the meaning of the general words, *dying without issue.* There was merely a slight alteration in the phraseology, *leave* or *leaving no issue ;* and on these words, *leave* and *leaving,* it was said the estate might go over. Bayley, J. spoke generally, and said, " the words *dying without issue,* as they occur in this will, do not mean a dying without issue indefinitely, but under such special circumstances, as would enable the estates to go over to the daughter after the son's death ; that is, in case he died under 21, and without issue ; and to the cousin after the death of the daughter without issue." The whole are evidently continued along as executory devises, upon these slight words, although the estate had actually vested in the son.

But there is no longer any such thing as an estate tail in this country. Until lately, I did suppose with the opposing counsel, that the acts of 1782, and 1786, instead of simply repealing the statute *de donis,* had qualified or introduced a new rule founded upon that statute ; that is to say, they had suffered an estate tail to arise, and then turned it into an estate in fee simple ; and the words of the two acts would probably justify such an inference. But two years after the statute of 1786, all the English acts were repealed.(*o*) Then there was an end of the statute *de donis.* Estates tail were gone. They were no longer to be converted into fees simple. They were left, as at common law, to become absolute on the birth of issue ; and even a limitation over on a conditional fee, was an executory devise, in its own nature, and must continue so. Medcef Eden, then, according to the reasoning of the Supreme Court, had conditional fees in himself ; and on his death without issue, the whole went over, in this point of view. The whole is reduced to the common law estate. The moment issue is born to the holder of this

(*o*) 2 Green
leaf, 116, s. 37,
A. D. 1788.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

(p) 2 Desaus.
Rep. 94.

estate, it becomes absolute and the taker may alien; and the only clog is a want of ability to alien till this event. Mere estates, with us, are thus placed upon the same ground as in South Carolina. Being thrown back to the common law conditional fee, there is no longer any doubt. The very point has been decided in that state. These words, *dying without issue*, about which we are contending, whatever may be their construction in reference to a fee simple or fee tail, there is no doubt that they are sufficiently definite and limited, in themselves, to carry over a fee conditional. This was the very point argued and decided in *Cruger and others* v. *Heyward*,(p) and is placed by Chancellor Rutledge on grounds which cannot be shaken.

But it is said we have no right to shelter ourselves under the title of John Eden and Hannah Johnson. It is enough that we are in possession. We are assailed by one who has no title whatever, and shall he be permitted to say, " I will turn you out, though I am just as much a wrong doer as you, because I choose to fight their battle myself ?" If the devisees of Medcef, the younger, claim under him as the heir of the English devisees, we know how to meet them; but how are you to arrive at the facts which are to defeat us on this ground ? You must presume that John Eden and Hannah Johnson died before Medcef, the younger. Here is a special verdict. If this was the fact, the plaintiff below should have put it before the jury. If absent, and not heard of for 7 years, this should have been shown. For aught that appears, both those devisees are, and have been, for years, resident in this country. When one claims as heir, he must show the death of the ancestor—not call for proof from the opposite party that he is alive upon the presumption that he is dead.

The plaintiff in ejectment must recover upon the superior strength of his own title; but the other side would reverse the rule. It is said, the defendant cannot shield himself by his possession, and that such is the rule in a writ of right. This we deny. In a writ of right, as well as in ejectment, the plaintiff must show a right *prima facie*, and then the issue is on the superior right. How is it possible that this should

be otherwise? Even a sub-lessee may show the title of his lessor at an end.

But it is said that Medcef, the younger, made an actual entry; and this is claimed as a prior possession. That entry was with a view to avoid the fine; and did not give him possession. If one is in possession, he may hold against a stranger. Here, we may hold against the plaintiff, till the heir or devisee comes, as the plaintiff might do against us, if he were in possession.

THE CHANCELLOR. This Court has heretofore determined, in the case of *Anderson* v. *Jackson,* that the devise of the share of either of these two brothers, when either should die without issue, to the survivor of them, was valid as an executory devise; and that Medcef Eden the younger, on the death of his brother Joseph, took the lands devised to Joseph. But this Court did not, in that case, decide, what estate Medcef Eden the younger took, in these lands. The cause now before us, renders it necessary to determine the nature and extent of his estate.

When Medcef Eden, the younger, came into possession of these lands, the first of the two executory devises took effect. That devise then ceased to be executory, and the estate which it conveyed vested in possession.

The Supreme Court hold, that when the first of several executory devises vests in possession, those which follow vest in interest, at the same time, and ceasing to be executory, become vested remainders, subject to all the incidents of remainders. This doctrine is sufficiently supported by the cases cited by the Supreme Court, and it is clearly supported by the opinions of Fearne, Williams and Cruise, in their commentaries on this branch of the law.

The doctrine itself seems conformable to some other principles. It is a rule that no remainder can exist, without a preceding estate to support it; and by another rule, whenever a devise of a future interest can take effect, as a remainder, it shall be so considered. It is entirely agreeable to these rules, that when the first devise becomes executed and form

*Margin notes:*

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

What *Anderson* v. *Jackson* decided.

When 1st executory devise took effect in M. E.

When 1st executory devise vests, those following are vested remainders.

This conforms to other rules.

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

Objections
considered.

a particular estate capable of supporting a remainder, suc-
ceeding devises shall be considered as remainders.

The objection to this doctrine is, that it may often defeat
the intentions of the devisor. The essential difference be-
tween a remainder and an executory devise, being, that
a remainder may be destroyed, and that an executory devise
is protected ; the real effect of this doctrine is, in some
degree to narrow the operation of executory devises.   If in
a series of contingent devises of the same land, all which
succeed the first, are considered as becoming remainders,
when the first is executed and vests in possession ; these
succeeding remainders may be destroyed, and the intention
of the devisor, in making the more remote dispositions
may be frustrated.   But these remainders can be defeated
only by the owner of the preceding estate in possession :
when this is done, the interest of a distant devisee is ex-
tinguished for the benefit of a prior devisee.   Such an ex-
tinguishment cannot, in general, take place, until a consider-
able time after the death of the devisor, when the characters,
situations or necessities of the devisees, may be very differ-
ent from those which the devisor regarded as probable ;
and though the intention of the devisor, may be sometimes
defeated, they are contravened only in favor of a nearer
object of his affections, and for the purpose of unfettering
the land from future interests long postponed.   Our laws
allow the owner of lands to devise them, according to his
affections or his pleasure, when he gives his own absolute
property in them : but when he devises a title which is
absolute in himself, to different persons in succession, upon
events and contingencies, which cannot occur, until long
after his death, he seeks to establish a special course of
succession and to give law to posterity.   These contingent
dispositions, when confined within moderate limits of
of time, are without objection, and are often very suitable
provisions for the reasonable exigencies of families.   When
they are allowed to prevail through a long period, they
become pernicious, and by whatever name they may
be called, are in effect entails, attended with all the evils
of unalienable property in land.   The rule that an exe-
cutory devise shall not prevail, when it extends beyond a
life or lives in being and 21 years and 9 months af-

terwards, is the first and great restriction upon these dispo-
sitions; and the rule now in question, is in effect, a farther
restriction upon remote dispositions, which if they operate
at all, can take effect only after two preceding estates have
had their completion.  Thus, in the case before us, the last
devise to John Eden and Hannah Johnson, could never take
effect, until the two preceding estates of Joseph Eden and
Medcef Eden the younger, should have ceased.   Where a
devisor wishes to make provision for several persons, in dif-
ferent events, his purposes may often be as well accomplish-
ed by devising his land in parts, with executory devises of
parts, upon single contingencies, as by the method so usual
in England, of devising the whole or a large part of an es-
tate to various persons, upon many successive contingencies.
The desire to preserve an estate or a large part of it entire,
as long as may be possible, is frequently a strong motive
for remote executory devises·; and so far as such divises
may tend to prevent or postpone the division of lands,
there is in this state no reason of law or motive of policy to
support them.   But all our law on this subject, is derived
from England.   If this rule operates as a restriction upon
the power of the devisor to bind his lands, by a series of con
tingent devises, which from the number of lives concerned,
may extend to a period long after his death ; and if such a
restriction has been found proper in England, it is still more
proper here.  We have abolished entails, and all dispositions
of the nature of entails, are opposed to the policy of our in-
stitutions.   The doctrine in question is entirely in accor-
dance with the policy of our statute abolishing entails ; and
contingent devises subjected to this restriction, still have an
operation sufficiently ample, for all ·salutary purposes.   If
this doctrine is law, I am sensible that it is not necessary
here, to discuss the policy of the rule ; and I concur with
the Supreme Court, in holding it to be law, upon the autho-
rities which that Court has cited.   But as some of the Eng-
lish cases are indistinct upon this point, and the question is
here new, I have thus briefly examined the principle involv-
ed in this rule and its practical effect.

The ultimate devise to John Eden and Hannah Johnson,
was in fee simple.  If, when the preceding estate of Medcef

Entails abol-
ished ; and li-
mitations   in
nature of en-
tails  contrary
to our policy

Dev'se to J E.
and H. J. be-
came   a   re

Wilkes
v.
Lion.

mainder after
a   fee   tail,
which last a-
rose by impli-
cation.

Statute turned
it into fee sim-
ple.

To say that
devise to J. E.
and H. J. does
not go over, is
not    inconsis-
tent with *An-
derson* v. *Jack-
son.*

Eden the younger, vested in possession, the right of John Eden and Hannah Johnson became a remainder, it must have been a remainder after a fee tail. Considering both these devises as becoming executed at the same time, and regarding them in connection, the estate of Medcef Eden the younger, was a fee tail, and the succeeding estate of John Eden and Hannah Johnson, was a remainder in fee simple, upon the termination of that estate tail. The case is so often mentioned ·in the English books, as an estate tail by implication; and this case is entirely analogous to those in which that construction has prevailed. Cruise's Digest, title Devise, ch. 18, sections 29, 30 and 31.

The consequence of this construction is, that our statute enacting that estates tail shall be estates in fee simple, converted the estate of Medcef Eden, the younger, into an estate in fee simple.

These principles decide this cause ; and they render it unnecessary to consider other questions which the cause presents. But it is proper here, to consider the decision of this Court, in the case of *Anderson* v. *Jackson,* so far as to show, that my opinion in this cause, is consistent with that decision. This Court decided in that case, that the estate of Joseph Eden, was not a fee tail. That decision was evidently made, in order to give effect to the intention of the devisor ; he having declared, that the survivor of his two sons, should have the share of the son who should first die without issue. This Court appear to have been governed in making that decision, by two reasons; first the meaning of the terms, dying without issue, which were understood in their ordinary sense ; and secondly, the plain and forcible import of the term survivor. The first of these reasons has equal force, in respect to the devise to John Eden and Hannah Johnson ; but the second reason is not applicable to the last devise, the devisor not having described John Eden and Hannah Johnson as survivors. In deciding, therefore, that the estate of Joseph Eden was not a fee tail, this Court by no means determined that the estate of his surviving brother, Medcef Eden the younger, was not such an estate. The use of the word survivor in the first case, and the absence of that term or any word of similar import, in the last case,

form a strong distinction between the two executory devises. The question in the case of *Anderson* v. *Jackson* was between the right of Joseph Eden and the right of Medcef Eden the younger. It was not necessary in that case, to determine, and this Court did not determine, the exact nature or extent of the estate which Medcef Eden the younger took, upon the death of his brother Joseph. The ultimate devise to John Eden and Hannah Johnson, was not in question, and nothing concerning their interest was or could be decided upon that occasion. The construction and operation of the two executory devises, in their relation to each other, presented questions, which were not before this Court, were not considered, and were not decided in that case. Indeed, these questions, as they now stand before us, could not arise, until after the death of Medcef Eden the younger. The opinion, that the last executory devise to John Eden and Hannah Johnson, was extinguished in the estate of Medcef Eden the younger, is therefore, I conceive, perfectly consistent with the former decision of this Court, that the first executory devise to Medcef Eden the younger, took effect upon the death of his brother Joseph.

In using the expression, fee tail and estate tail, I mean throughout, such an estate as would have been in this state a fee tail, before the twelfth day of July, 1782, when the first statute abolishing entails was passed.

To recapitulate :

*Recapitulation.* 1. The interest of John Eden and Hannah Johnson, became a vested remainder, when the preceding estate of Medcef Eden the younger, vested in possession.

2. In these circumstances, the estate of Medcef Eden the younger, was a fee tail, with a remainder in fee simple, to John Eden and Hannah Johnson, upon the termination of the estate tail.

3. Our statute converted the fee tail of Medcef Eden the younger, into a fee simple absolute.

I am accordingly, of opinion, that the judgment should be affirmed.

CRAMER, Senator. This case is brought before us by writ of Error, upon a judgment of the Supreme Court, giving a construction to the will of Medcef Eden, the elder.

Wilkes
v.
Lion.

Two principal questions are raised:

1. What estate did Medcef Eden, the younger, take in the lands devised to his brother Joseph, on the death of the latter without issue, in July, 1812?

2. What estate, if any, did John Eden and Hannah Johnson take on the death of Medcef Eden, the younger, without issue, in July, 1819?

1st question same as in *Anderson* v. *Jackson*.

The first and main question, is the same which was agitated and decided by this Court in the case of *Anderson* v. *Jackson*, (16 John. 386.) The decision in that case was on the same will, and in effect between the same parties; for though Anderson was the defendant in that suit, yet the Bank (as I understand the history of the case) on an allegation that they held property to a large amount depending on the same question, were permitted by this Court to be heard by their counsel, in opposition to the then claim of Medcef Eden.

This Court is, then, called on in a very solemn and impressive manner (for much ingenuity and legal learning have been displayed on this point by the counsel on both sides) to review its own decision on an important rule of law, affecting titles to real property. And though several members of this Court did, soon after the commencement of the argument on this point by the plaintiff's counsel, express a reluctance to suffer it to be at all agitated, yet it has been very fully and ably discussed; and manifestly, is the point on which they principally rely. I have, therefore, listened to the arguments, and examined that case with attention, and I am entirely satisfied as to the soundness and correctness of that decision; and I am also satisfied that it is in harmony with the most approved decisions in England, before and since our independence; that it is consistent with our policy, is supported by the ablest judical opinions in our sister states, and ought not now to be disturbed.

*(q) Fosdick* v. *Cornell*, 1 John. Rep. 440. *Jackson* v. *Blanshan*, 3 id. 292. *Moffatt* v. *Strong*, 10 id. 12. *Jackson* v. *Staats*, 11 id. 337. *Anderson* v. *Jackson*, 16 id 382.

But we have not, in my view of the subject, the power (and by *power* I mean *right*) now to question or impeach that judgment rendered by this Court, and founded on the uniform decisions of the Supreme Court during a period of more than *seventeen* years.*(q)* Wills have been made, and estates settled, on the principles of those cases, which have been

deemed and treated as a settled law of the land. They have been solemnly recognized by this Court, of the last resort, published to the world, held out to our citizens as the sure and established land marks by which they might, with perfect safety, regulate their conduct in acquiring or perfecting titles, or dispose of estates upon their dying beds, in such a manner that their honest intentions could not be defeated. It is now, however, sought to prevail on this Court, by reversing the judgment of the Supreme Court, to annul their own ; and thus overturn, at one fell blow, the numerous decisions which have for many years concurred in the doctrines on which that judgment is founded. Can any good citizen, for a moment contemplate the consequences of such a measure without alarm ? All the suitors, whose hopes may have been defeated by the decisions made upon these principles, will have the right to commence suits, and recover back the lands which have been awarded to their adversaries, without regard to the various intermediate alienations, or the value or extent of the improvements which may have been made by *bona fide* purchasers.

These evils, however, might be transient ; and affecting a few hundreds only, or possible a few thousand individuals, would probably terminate and be forgotten with the present generation. But a more momentous and ruinous consequence, would be the total insecurity of property, and all personal rights. An appeal, or writ of error, would be renewed, on the same point, at every session, like petitions for bounty lands, or bank incorporations, in the perpetual hope of finding a friend in every new member. Law suits would be multiplied and interminable ; or decided, only by the perseverance of suitors, or rather by the length of their purses. Men of discretion, friends to peace, order and industry would flee a country were nothing is stable or secure.

Various attempts have been made in the House of Lords in England, sitting as a Court of appeal, to reconsider with a view to reverse their own decisions, but ultimately without success. A collection of these cases may be found in a note to 1 Ridgway's Reports, 509. In one of these cases, (*Broughton* v. *Delves*,)(r) Lord Cambden was for reversing the judgment of the King's Bench. The house had been

ALBANY,
Dec. 1823.

Wilkes
v.
Lion.

The maxim
*stare    decisis*
*vindicated.*

Particular
evil of departing from that
maxim.

General evil
of doing so.

Doctrine of
the House of
Lords.

(r) 1 Ridgw
Rep. 513.

(s) And vid.
*Magrath* v.
*Muskerry*, 1
Ridgw. Rep.
469.

Remedy is
properly legis-
lative.

*Anderson* v.
*Jackson* de-
cides that de-
vise to M. E.
was good, as
executory de-
vise.
Ground of de-
cision.

The words dy-
ing without is-
sue, *per se*,
mean indefi-
nite failure.

New suits for
land withheld,
notwithstand-
ing *Anderson*
v. *Jackson* ;

equally divided whereby the judgment of the K. B. was affirmed against his opinion ; but on a petition for a re-hearing he strenuously opposed it, and the petition was unanimously rejected.(s) I hope that we may, and I trust we shall, exhibit equal firmness and stability. Thus, we shall suppress a repetition of such attempts in future, and preserve to the citizens of this state one judicial forum, where the wearied and exhausted suitor may ascertain his rights, and repose from litigation.

If any general mischief or inconvenience should at any time be experienced from this or any other docision of ours, the legislature are competent to apply a remedy, and will no doubt do it, with a saving as to all rights acquired under those decisions.

By the judgment of this Court in the case of *Anderson* v. *Jackson*, it is decided that the devise over to Medcef, on the death of his brother Joseph, without issue, was a good *executory devise*. This decision rests on the single circumstance of the word *survivor*, which necessarily limited the failure of issue to a life in being ; and the Court as well as the counsel, unanimously agreed, (as may be collected from their arguments and opinions,) that if the limitation over had been on a mere *failure of issue*, without the use of the word *survivor*, it would have been void, as being a limitation on an indefinite failure of issue ; and so tending to a perpetuity.

Such is the inflexible rule of law, established and respected for ages, and to depart from it, at this day, might unsettle half the titles in the state. By that judgment it was decided that Medcef Eden was, and had been since August 29th, 1812, entitled to the possession of all the real property which by the will of his father was devised to Joseph, and by necessary implication, that the title of the Bank and of the other plaintiff in Error, ceased on that day ; being the day on which Joseph Eden died.

The ejectment against Anderson was brought to settle, and did settle the effect of the first devise. And it was to be presumed that after the decision of that point, by this Court of the last resort, the persons who had purchased and entered under the title of Joseph, and who had no pretence of

any other title, would have surrendered the premises to Medcef. This, however, has not been done, and he instituted suits to recover possession of the land withheld. These suits, it seems, were defended; and before the trial Medcef Eden died, without issue, having devised all his estate to his wife and her daughters. And the occupants of the lands, devised to Joseph, now resist the claim under Medcef, by setting up the last devise, which is in these words: "And in case of both their deaths, without lawful issue, all the property aforesaid to my brother John Eden, of Loftus, in Cleaveland, in Yorkshire, and my sister Hannah Johnson, of Whitby, in Yorkshire, and their heirs." The plaintiffs in Error, now insist, that by this devise, the estate of Joseph and indeed the whole estate vested in John Eden and Hannah Johnson, and that therefore, the devisees of Medcef Eden, the younger, are not entitled to a writ of possession.

2. The effect of the last devise, therefore remains to be examined; and in arriving at a just conclusion upon that point, we shall be much aided by recurring again to the case of *Anderson* v. *Jackson*. It has before been remarked, that the decision, in that case, turned wholly on the word *survivor*, which word alone rescued the first limitation from destruction. This is in unison with the several cases decided by the Supreme Court of this state, from the case of *Fosdick* v *Cornell*,(t) to that of *Jackson* v. *Billinger*.(u)

In all these cases there is no dissent from the opinion, that a general dying without issue, omitting words which confine it to a life in being, is a limitation on an indefinite failure of issue, and therefore void; a construction which cannot be denied, and which is founded in sound policy. If we depart from this salutary rule, we shall, in the course of a few generations, have a great portion, if not the whole of the landed property, in the state, so shackled as to be rendered unalienable; for almost every man would be desirous to perpetuate his property among his own blood relation, and would therefore limit it to an indefinite extent, if the policy and rules of law would permit. It would be useless and unprofitable to cite an authority, in order to establish the well settled rule of law upon this head. All those

*Margin notes:*

ALBANY, Dec. 1823.

Wilkes v. Lion.

But M. E. dies before trial without issue, and occupants set up last devise.

Effect of last devise examined

(t) 1 John. 440.

(u) 18 id. 368.

The rule that words dying without issue, per se, mean indefinite failure, &c. farther considered

referred to by the late Chancellor Kent, in the case of *An-derson* v. *Jackson*, and all those cited by the counsel in that case, at page 385, of the volume in which it is reported, so far as I have been able to examine and judge of them, concur in its support. It is, therefore, in my judgment, no longer the subject of reasoning or doubt. It has become obligatory upon all our Courts, and can be abolished, or impugned, only by legislative power. Indeed, the ingenious and learned counsel for the plaintiffs in Error, were constrained to admit the antiquity, the uniformity and the paramount correctness of the rule; but they endeavor to escape from its operation, in this case, by insisting that the last devise is on a qualified or definite failure of issue, and means, by implication, a dying without issue, in the lifetime of John Eden and Hannah Johnson, or issue living at the death of the surviving son. Let any man of common sense read these words, and say if he can discover any such meaning. To me it is most manifest, that it was the settled intention of the testator, to give the estate to the *heirs* of John Eden and Hannah Johnson, in case they should die before his sons, (an event to be expected, according to the natural course of life,) whenever the issue of the sons should become extinct. In *Doe* v. *Fonnereau*,(v) Ld. Mansfield asked Serjeant Hill, whether he had been able to find any case of real property, where the Court, on the words *in default of such issue*, had implied a restriction to issue living at the death of the father, and the learned Serjeant acknowledged, that he had not been able to find any such case. It would, therefore, be as repugnant to law and precedent as to reason and common sense, to infer such a restriction.

*(v)* Doug. 470.

But the learned counsel for the plaintiffs in Error, aware of the fallacy of such a position, say, that as the testator in the first limitation used the words *survivor*, and the second limitation being in the same sentence, and respecting the same subject, we have a right, and it becomes the duty of this Court, to supply the word *survivor* in this branch of the sentence. In reply to this suggestion, it may be justly remarked, that the subject of the devise is different; the one being of part, only, of the land, and the other of the whole. The different devises, also, relate to persons standing in dif-

ferent relations to the testator, the first being to his own children, the second to collateral relations. It is, therefore, to be expected, that he would use different words, and have different intentions. He has used different words, and most obviously had different intentions. Yet it is earnestly pressed upon us to insert this word *survivor* in the last devise, where the testator has not seen fit to use i , and where we are bound to infer that he did not intend to use it.

If we were disposed to supply this word *survivor*, it has not been shown in what manner this is to be accomplished ; nor where the word ought to be placed. I have attempted it in vain ; it is not possible to insert this word alone, so as to make common sense of the paragraph. I invite the members of this Court to make the experiment, and I think they will be satisfied of its impracticability.

The counsel for the plaintiffs in Error, sensible of this difficulty, iusist that if we cannot insert this single word so as to produce the effect desired, we must supply other words which will. Thus, after the words, *lawful issue*, in the last devise, insert, ' *living at their death*,' or ' *at the time of the death of the survivor of them ;*' and after the words, John Eden and Hannah Johnson, insert, ' *in case they should survive my said sons*.'. All this, or something equivalent, must be supplied, or the construction, here contended for cannot be sustained. This, I presume, the Court will not do ; for it is not the province of this or any other Court to make a will for the testator, but to settle the legal construction of that which he has made.

I have examined this case with all the assiduity and attention justly due to the magnitude of the controversy, and the importance of the principles it involves; and unless I totally misunderstand the import of this bill, and misconceive the law applicable to it, the judgment of the Supreme Court (though the learned Judge, who delivered the opinion of that Court, took a different ground in relation to one of the points) maintains the legitimate construction of the testator's will, without addition or diminution ; is congenial with our policy and laws ; is supported by an uninterrupted series of the ablest adjudications, and should, therefore, be affirmed.

The rest of the Court concurring in the result of these opinions, (King, Senator, dissenting,) it was thereupon ORDERED, ADJUDGED and DECREED, that the judgment of the Supreme Court be affirmed ; and that the record be remitted, &c.

NOTE.—No division of the Court was had upon the different grounds taken, by the CHANCELLOR and by CRAMER Senator, against the ulterior devise going over, but the Court voted generally to affirm the judgment.